501 A.2d 1383

**Walter PEAK, Jr., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 1985.

Decided Dec. 12, 1985.

Reargument Denied March 31, 1986.

John Stember, Frank J. Piatek, Neighborhood Legal Services, Pittsburgh, for appellant.

Richard L. Cole, Jr., Dept. of Labor & Industry, Unemployment Compensation Bd., Chief Counsel, Charles G. Has-

son, Acting Deputy Chief Counsel, Richard F. Faux, Associate Counsel, Barry M. Hartman, Chief Counsel, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This is an unemployment compensation claimant's appeal by allowance of a Commonwealth Court decision affirming the Unemployment Compensation Board's denial of benefits. Reversing a referee's decision for appellant, Commonwealth Court and the Board held appellant's employer had met its burden of showing willful misconduct under Section 402(e) of our Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Session, P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), which precludes benefits.

Appellant contends the referee's award of benefits was based on resolution of a question of credibility in his favor and that Mr. Justice Larsen's opinion [1] in *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982), requires appellee Board to defer to its referees' credibility determinations in resolving questions of primary fact or at least to explain why it refused to adopt them. Appellant generalizes this contention by arguing that a factual finding by an administrative agency is not supported by substantial evidence on the whole record if that finding of fact depends on evidence discredited by the referee who conducted the hearing. He contends an administrative decision based on such a finding is arbitrary governmental action in violation of due process.

We reject these arguments and affirm Commonwealth Court. *Treon* involved the Board's rejection of a referee's

1. Mr. Justice Larsen's opinion was joined by then Chief Justice O'Brien and former Chief Justice Roberts. Mr. Justice Flaherty filed a Concurring Opinion which was joined by the other three members of the Court.

finding based on uncontradicted evidence. Here, the evidence of appellant's misconduct was conflicting. Appellant's more general argument disguises an attack on the settled interpretation of Section 504 of the Act, *as amended by* the Act of December 5, 1974, P.L. 771, § 10, 43 P.S. § 824 (Supp.1985), which we have consistently held makes the Board the ultimate finder of fact with power to substitute its judgment for that of its referees on disputed facts. Without a legislative change in this section of the law, we are not inclined to disturb its settled meaning.[2] Appellant's related due process argument resolves itself into the proposition that the legislature can constitutionally entrust an administrative power to find facts resolving conflicting evidence on grounds of credibility only to the board or official who conducts the hearing at which the record is made, a proposition we cannot endorse.

We accept the statement of facts in appellant's brief, which follows:

Walter Peak [appellant] worked as a warehouseman for I. Samuels and Sons in New Castle, Pennsylvania, from 1980 until August, 1982, when he was discharged for allegedly violating an employer rule. The [appellant] filed an application for Unemployment Benefits which was denied by the local office of Employment Services (OES) under Section 402(e) of the Unemployment Compensation Law (Act). Mr. Peak filed an appeal and a hearing was held before Referee Paul Sneed at which the employer, [appellant] and several witnesses testified.

Most of the facts in this case are not in dispute. The employer permitted Peak a one hour lunch break which [appellant] could take at his discretion. (NT p. 10) In November or December, 1981, Peak and Russell Hedland, a co-worker went to lunch together leaving an inexperienced employee at the warehouse. (NT p. 27) After learning of this, the employer instructed Peak and Hedland not to leave the warehouse unless there was an experienced employee available to watch it. (NT pp. 28,

**2.** *See infra* at 275–276.

35) Four months later, on March 17, 1982, Peak and Hedland again went to lunch together. (NT p. 26) However, this time an experienced warehouseman, Mr. Malizia, and a new employee remained on duty. (NT p. 18) Unbeknownst to [appellant], Malizia had health problems and, according to the employer, had been given permission by the employer to go home at any time, though he did not leave on March 17, 1982. (NT p. 20) When the employer learned that Peak and Hedland had gone to lunch together, he fired both of them. (NT p. 12)

Only a single fact was in dispute before the Referee: the nature of the employer's rule about lunch. The [appellant] and Hedland testified that Samuels had only prohibited them from leaving the warehouse together when there were *no* experienced employees on duty. (NT pp. 28, 35) Since Malizia, who the employer concedes is an experienced employee, was at work on the day in question, Peak and Hedland believed they were free to go to lunch together. The employer, on the other hand, contends that he told Peak and Hedland many times that when one went out to lunch, the other must remained behind. (NT p. 8) The employer testified that he feared that Malizia's health problems might cause him to leave work and, if Peak or Hedland were not present, there would be no employees capable of managing the warehouse. (NT p. 22)

Appellant's Brief at 3–4 (footnotes omitted).

On these facts, the referee found:

There was a conflict in testimony between [Hedland] and employer concerning whether the employer had specifically instructed [Hedland] not to take his lunch break at the same time as Mr. Peak or whether he had merely instructed [Hedland] not to leave the warehouse uncovered during the lunch hour. The Referee finds that [Hedland's] interpretation of the employer's instruction was reasonable. . . .

Referee's Decision at 2.

The Board reversed, finding:

> Claimant was discharged for violating a direct order from his employer that he should not take a lunch break at the same time as another employe....

Unemployment Compensation Board of Review Decision at 2.

■ In *Treon*, we held that the Board acted arbitrarily and capriciously in ignoring a referee's finding that a bricklayer failed to accept his employer's offer of work for the duration of a construction project because the work was an excessive commuting distance from his home. The Board accepted three of the referee's findings but ignored his finding that distance from home and travel expense compared with the rate of pay and the duration and uncertainty of steady employment motivated the claimant to refuse the job he was offered. Nevertheless, both the Board and the referee determined that these reasons were not causes of a necessitous and compelling nature. We reversed, holding that, in the absence of proof that construction workers customarily moved about on such jobs, the uncertainty of steady work coupled with the expenses of traveling and staying within a reasonable commuting distance of the job site, were "cause[s] of a necessitous and compelling nature" which justified that claimant's refusal under the language of that section of the Act. 43 P.S. § 802(b) (Supp.1985).

In *Treon*, the evidence that claimant refused the temporary job he was offered, because of the expense and dislocation involved in working at such a distance from his home, was uncontradicted. On review, we held that the Board ignored this uncontradicted evidence and reached a conclusion that was not only unsupported by evidence on the whole record, but was also inconsistent with the statute.

> Although the weight to be given the evidence and the credibility to be afforded the witnesses are within the province of the Board as finder of fact, ... *such a body is not free to ignore the overwhelming evidence in favor of a contrary result not supported by the evidence.*

*Borello v. Commonwealth, Unemployment Compensation Board of Review,* 490 Pa. 607, 618–19, 417 A.2d 205, 211 (1980) (emphasis added; citations omitted).

*Treon* is readily distinguishable from this case with its conflicting evidence. The Board's resolution of the conflicting evidence on this record compelled its result. *Treon* involved the additional issue of whether distance and expense of travel justify refusal of a job offer. That conclusion involved a determination of whether the work offered was "suitable work" under Section 4(t) of the Act, *as amended*, 43 P.S. § 753(t). We determined that work of uncertain duration far removed from home was, unsuitable absent evidence that such relocation was customary in the industry. Here, if the employer's testimony that he repeatedly told this claimant not to take lunch at the same time as one of his co-employees is believed, the conclusion, that he engaged in willful misconduct when he and the co-employee did go to lunch together, follows as a matter of course.

Thus, *Treon*, does not control the facts of this case and appellant's first argument fails.

■ Nevertheless, appellant claims, even if the Board remains free to reverse its referee's credibility determinations when the evidence is conflicting, its decision here cannot stand because *Treon* also requires the Board to set forth its reasons for doing so whenever it departs from a referee's findings of fact. To the extent *Treon* does impose such a requirement, its purpose is to ensure an adequate basis for judicial review. On this record, the Board's reason for reversing the referee is plain enough. Unlike the referee, it chose to believe the employer, not the employee. It disagreed with the referee's factual resolution of conflicting evidence, a power it has under Section 504 of the statute, *as amended*, 43 P.S. § 824 (Supp.1985).

We are not inclined to require a busy agency, whose swift disposition of the many cases before it is vital to the subsistence of our fellow citizens who suffer lack of work, to engage in acts of supererogation. The Board's reasons

for reversing the referee are plain enough on this record and permit adequate judicial review. We will not impose on it a requirement of redundant explanation. The Commonwealth Court's holding here, as in *Wilson v. Unemployment Compensation Board of Review*, 72 Pa. Commonwealth Ct. 504, 457 A.2d 164 (1983), and *Kustafik v. Unemployment Compensation Board of Review*, 75 Pa. Commonwealth Ct. 622, 462 A.2d 947 (1983), is consistent with *Treon* and we will not disturb it on that ground.

■ Appellant goes on to contend, however, that limiting our holding in *Treon* to cases involving uncontradicted testimony is inconsistent with the requirement that administrative decisions in quasi-judicial proceedings must be based on substantial evidence. In support of that argument, he refers to various federal cases which apply that well recognized standard to judicial review of administrative factual determinations. At the outset, we note that the standard for judicial review of administrative determinations in favor of the party with the burden of proof, such as this one, is substantial evidence on the whole record. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), *on remand NLRB v. Universal Camera Corp.*, 190 F.2d 429 (2d Cir., 1951). Here, the whole record included not only evidence favoring appellant, which the referee accepted, but also directly conflicting evidence favoring the Board's determination.

■ Referring to selected language of the United States Court of Appeals for the Second Circuit in *Moore v. Ross*, 687 F.2d 604 (1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 969 (1983), appellant asserts that there is never substantial evidence to support a credibility determination by a factfinder who has not seen and observed the demeanor of the witnesses whose credibility is in question.

We do not believe *Moore v. Ross* stands for that proposition, nor do we find it persuasive.

Because the requirement that the Appeal Board's findings rest on substantial evidence already safeguards

claimants from erroneous denials of unemployment benefits turning on credibility, the Due Process Clause of the Fourteenth Amendment does not require that the Board provide the additional safeguard of holding *de novo* hearings before reversing ALJ's credibility determinations. *See Mathews v. Eldridge*, 424 U.S. [319] at 335, 349, 96 S.Ct. [893] at 903, 909 [47 L.Ed.2d 18].

*Id.* at 610. Substantial evidence is correctly defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Murphy v. Commonwealth, Department of Public Welfare*, 85 Pa. Commonwealth Ct. 23, 29, 480 A.2d 382, 386 (1984) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 [1938]). The evidence in this case includes testimony from the employer that he repeatedly told appellant not to go to lunch at the same time as his co-employee. On this whole record, a reasonable man could accept that testimony and if he did so it would be adequate to support the Board's finding that appellant engaged in willful misconduct.

Analysis of appellant's argument that the Board cannot reverse a referee's credibility determination shows that, in reality, it does not involve a question of substantial evidence. It is actually an assertion that the legislature either did not or could not delegate the power to find facts on the basis of credibility to the Board unless the Board itself hears the evidence and observes the witnesses.

The argument that our legislature did not give such a power to the Board is quickly disposed of. Section 504 of the Act, *as amended*, provides:

The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct

the taking of additional evidence. When any claim pending before a referee is removed or transferred to the board, the board shall afford the parties and the department reasonable opportunity for a fair hearing. The parties and the department shall be duly notified of the board's final decision and the reasons therefor. A complete record shall be kept of each case heard before the board. All testimony at any hearing before the board, whether on appeal or otherwise, shall be taken by a reporter, but need not be transcribed unless the disputed claim is further appealed.

43 P.S. § 824 (Supp.1985). A long line of cases has interpreted this section of the statute to make the Board the ultimate finder of fact, *e.g., Rodriguez v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 65, 408 A.2d 1191 (1979); *Unemployment Compensation Board of Review of Leonhart*, 24 Pa. Commonwealth Ct. 196, 353 A.2d 925 (1976); *Unemployment Compensation Board of Review v. Wright*, 21 Pa. Commonwealth Ct. 637, 347 A.2d 328 (1975).

Appellant's reliance on *Jack v. Unemployment Compensation Board of Review*, 68 Pa. Commonwealth Ct. 624, 449 A.2d 883 (1982); *Krimmell v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 134, 136, 442 A.2d 15, 16 (1982); *Yazevac v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 90, 430 A.2d 1207 (1981); *Remaly v. Unemployment Compensation Board of Review*, 55 Pa. Commonwealth Ct. 551, 423 A.2d 814 (1980); and *Miller v. Unemployment Compensation Board of Review*, 45 Pa. Commonwealth Ct. 539, 405 A.2d 1034 (1979), is totally misplaced. In the first four of these cases, Commonwealth Court approved the Unemployment Compensation Board of Review's affirmance of the referee. In *Miller,* that court, in affirming the Board's reversal of the referee, stated:

The evidence presented at the hearing was conflicting; it is not this court's function to balance that evidence. Questions of credibility and the resolution of evidentiary

conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.

*Id.* at 541, 405 A.2d at 1036.

■ The contention that the legislature cannot constitutionally give this power to the Board is answered by the very case appellant relies on. *Moore v. Ross, supra,* was an appeal by class action plaintiffs of an order of the United States District Court, Southern District of New York, 502 F.Supp. 543 (1980), granting summary judgment for the defendants. Plaintiffs attacked the constitutionality of the procedures employed by the New York State Unemployment Insurance Appeal Board. The Circuit Court of Appeals affirmed, holding that:

> Substantial evidence review in state court provides constitutionally sufficient protection against the risk of arbitrariness in any decision by the Board reversing an ALJ's assessment of testimonial credibility.

> As in federal administrative practice, where the general rule under the Administrative Procedure Act is that an agency reviewing an ALJ's decision 'has all the powers which it would have in making the initial decision,' 5 U.S.C. § 557(b), the Board, not the ALJ, is the ultimate finder of fact. Its findings, if supported by substantial evidence, are conclusive upon state courts reviewing its decisions. *See Fisher v. Levine,* 36 N.Y.2d 146, 150, 325 N.E.2d 151, 154, 365 N.Y.S.2d 828, 832 (1975); *McGee v. Levine,* 37 A.D.2d 785, 785, 324 N.Y.S.2d 455, 456 (3d Dep't 1971). Credibility determinations are questions of fact within the Board's province, *see DiMaria v. Ross,* 52 N.Y.2d 771, 773, 417 N.E.2d 1004, 1005, 436 N.Y.S.2d 616, 617 (1980); *Lester v. Catherwood,* 30 A.D.2d 1025, 294 N.Y.S.2d 323 (3d Dep't 1968), which the Board may resolve differently from the ALJ as long as its resolution is supported by substantial evidence, *see, e.g., Schlicker v. W.R. Blake & Sons,* 55 A.D.2d 789, 389 N.Y.S.2d 913 (3d Dep't 1976); *Mankowski v. Levine,* 50 A.D.2d 962, 375

N.Y.S.2d 683 (3d Dep't 1975). This too is analogous to federal administrative practice.

687 F.2d at 608.

Like the Second Circuit, we perceive no due process violation in permitting the Board to reassess a referee's credibility determinations, so long as the Board is subject to judicial review on the substantial evidence test and is required to explain its decision in sufficient detail to permit meaningful appellate review. Indeed, in *Treon* we reversed the Board because its decision failed on both those grounds.

It may be wiser, more efficient or more expedient to entrust administrative determinations of fact based on credibility to the person who hears the evidence. However, that judgment is one for the legislature, not the judiciary. Indeed, just such a judgment was made by our legislature when it amended Section 423 of the Pennsylvania Workmen's Compensation Act[3] to change those referees from mere agents of the Board to independent factfinders whose credibility determinations became binding on the Workmen's Compensation Appeal Board. Before that amendment, the Workmen's Compensation Appeal Board had had the same power of *de novo* review over its referees as the Unemployment Compensation Board of Review retains under Section 504 of the Unemployment Compensation Act, 43 P.S. § 824 (Supp.1985). *Universal Cyclops v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

No analogous amendment has been made to the Unemployment Compensation Law despite recent substantial legislative activity amending that Act. We are not inclined to amend it for the legislature, even if we had the power to do so. We are not so wise that we can determine all the effects such a change would have on our troubled unemployment compensation system and, if we were, we would

3. Act of June 2, 1915, P.L. 736, § 423 *as amended by* Act of February 8, 1972, P.L. 25, § 3, and the Act of March 29, 1972, P.L. 159, § 23, effective May 1, 1972, 77 P.S. § 854 (Supp.1985).

not be justified in acting in place of the legislature in this respect.

At bottom, appellant's proposition that the referee should have the exclusive power to resolve credibility issues is based on the notion that credibility evaluations depend on the observation of live witnesses while they testify. Such observation is often important, but it is not the only factor to be considered in deciding who is to evaluate credibility on conflicting evidence. Considerations of expertise, uniformity of decision and control over policy are also relevant. Besides, a rule embodying that proposition would preclude a factfinder from weighing depositions against live evidence, or documents or exhibits against witness's testimony, a practice common and necessary in both administrative and judicial fact finding. We decline to adopt such a rule.

The decision of Commonwealth Court is affirmed.

LARSEN, J., files a concurring opinion in which PAPA-DAKOS, J., joins.

McDERMOTT, J., concurs in the result and files a concurring opinion.

LARSEN, Justice, concurring.

I agree with the majority that there was substantial evidence on the record to support the Unemployment Compensation Board of Review's determination that appellant was ineligible for benefits because he had engaged in willful misconduct under the Unemployment Compensation Law, Act of December 5, 1936, *as amended*, 43 P.S. § 802(e) (Supp.1985). Accordingly, I join the majority in affirming the decision of Commonwealth Court.

However, I consider it unnecessary under the circumstances to address appellant's arguments that a referee's determination resolving credibility of witnesses is sacrosanct and not subject to modification or reversal by the Board. In the instant case, the referee made the following findings of fact following a consolidated hearing of appel-

lant's claim and that of his co-worker, Russell Hedland, which findings were supported by the record:

3. In November or December, 1981, an incident occurred wherein the claimant [Russell Hedland] and one other warehouseman, Walter Peak, Jr., went to lunch at the same time, leaving only an inexperienced new employee and the salesman to watch the warehouse. After they had gone to lunch, the salesman also left which meant there was no experienced person on duty in the warehouse.

4. Following the above described incident, *claimant was instructed by the owner of the company that he and the other experienced warehouseman should not take their lunch breaks at the same time* in order that there would be an experienced employee on duty in the warehouse at all times.

\* \* \* \* \* \*

8. When the claimant went to lunch at the same time as Mr. Peak on March 17, 1982, *he believed the warehouse was adequately staffed* by the two individuals who remained on duty; and further, *he did not believe he was violating the employer's policy* regarding the taking of his lunch break.

Based on these fact findings, which served as the basis for the determinations of appellant's and Russell Hedland's claims, the referee made the following determination:

There was a conflict in testimony between the claimant and employer concerning whether the employer had specifically instructed the claimant not to take his lunch hour at the same time as Mr. Peak or whether he had merely instructed the claimant not to leave the warehouse uncovered during the lunch hour. *The Referee finds that the claimant's interpretation of the employer's instructions was reasonable* and he, therefore, did not knowingly or willfully violate the employer's policy on March 17, 1982.

Thus, it is clear that the referee did *not*, as appellant would have us believe, make a determination that the appel-

lant and Russell Hedland were more credible than the employer. Rather, the referee made a specific finding of fact that the employer had indeed instructed appellant not to take his lunch break with Russell Hedland, but *concluded* that appellant's interpretation of these instructions was reasonable.

It cannot be said, therefore, that the Board substituted its own judgment on a determination that was solely one of credibility of witnesses and resolution of conflicting testimony. In reversing the referee's determination, the Board expressly adopted the referee's *findings* that the employer had specifically instructed appellant not to take his lunch break with Mr. Hedland and that the two employees had believed that their conduct on March 17, 1982 would not violate the employer's instructions. The Board's point of departure with the referee's determination was not, therefore, with his resolution of conflicting testimony but with his conclusion that the employees' conduct was reasonable. The Board stated:

> The claimant was discharged for violating a direct order from his employer that he should not take a lunch break at the same time as another employe ... and there is nothing in the record to show that he had good cause for his violation. *While the Referee granted benefits on the theory that the claimant was not unreasonable in interpreting that the employer meant only that the warehouse should be properly covered, the Board does not agree with this reasoning. The employer's instructions were specific and the claimant did not have authority to decide who was capable of covering the warehouse.* The Board can find no justification for his substitution of his judgment for his employer's [judgment]. . . .

The Board did not substitute its determination of credibility for that of the referee's, but rather rejected the referee's conclusion that the employees' interpretation of the employer's instructions was reasonable. This was well within the powers of the Board under the Unemployment Compensa-

tion Law to modify or reverse a determination of the referee on the basis of the evidence previously submitted. 43 P.S. § 824. Since the issue of the authority of the Board to substitute its judgment of credibility of a witness for that of the referee's is not before us, the majority's discussion and resolution of the issue is, in effect, an advisory opinion which I do not subscribe to.

PAPADAKOS, J., joins in this concurring opinion.

McDERMOTT, Justice, concurring.

I concur in the result reached by the majority, but like Mr. Justice Larsen, I am not convinced that the question whether the Board may reverse a referee's finding on credibility is an issue in this case. The Board did not reject the referee's determination; what it did was interpret his findings.

I believe the question of importance and would prefer for precedential reasons to await a more direct conflict.