566 A.2d 632

**LEONARD S. FIORE, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1989.

Decided Nov. 14, 1989.

Petition for Allowance of Appeal Granted
March 14, 1990.

584

Richard DiSalle, Edmund M. Carney, R. Stanley Mitchel, Rose, Schmidt, Hasley & DiSalle (Roy A. Powell, Jones, Day, Reavis & Pogue, of counsel), Pittsburgh, for petitioner.

John T. Kupchinsky, Deputy Chief Counsel, Dept. of Labor and Industry, Harrisburg, for respondent.

Irwin W. Aronson, Jerome H. Gerber, Handler, Gerber, Johnston & Aronson, P.C., Harrisburg, for intervenor Pennsylvania State Bldg. and Const. Trades Council, AFL–CIO.

Before BARRY and McGINLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Leonard S. Fiore, Inc. (appellant) petitions for review of an order of the Department of Labor and Industry (Depart-

ment), Prevailing Wage Appeals Board (Board) that affirmed an order of the Secretary of the Department (Secretary). The Board, affirming the Secretary's order, found appellant committed an intentional violation of the Prevailing Wage Act (PWA)[1] and, therefore, was subject to three years' debarment. We affirm.

Appellant, a construction contractor, is a general contractor on public projects. On several occasions, beginning as early as 1982, the Prevailing Wage Division (Division) of the Department investigated appellant's compliance with the PWA by visiting job sites, interviewing employees and auditing payroll records. In 1984, an issue arose in regard to appellant's fringe benefit calculations[2] for employees on three public work projects (projects).[3] On July 8, 1986, the Secretary issued notice to the appellant and the Division, wherein a hearing before an examiner was scheduled for August 15, 1986. The purpose of this hearing was to admit into the record a proposed stipulation of facts (proposed stipulation) between the parties, whereby appellant admitted to unintentional violations of the PWA, on the projects.

No representative of appellant attended the August 15, 1986 hearing, but three of appellant's workers, Michael Matis, James Termin and Terry Robinson (Robinson) (collectively, workers) from the projects appeared and objected to

1. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165-1 to 165-17.

2. The fringe benefit calculation is a credit against the prevailing wage to which a contractor is entitled for the cost of fringe benefits provided to the employee.

3. These projects consisted of:
   1) New Elementary School
   Hollidaysburg Area School District
   Hollidaysburg, Blair County, PA
   2) Academic Activities Building
   The Pennsylvania State University
   State College, Centre County, PA
   3) Student Apartment Building
   The Pennsylvania State University
   State College, Centre County, PA

the proposed stipulation. On December 9, 1987, the Pennsylvania State Building and Construction Trades Council (intervenor) filed a petition to intervene, which was granted. Another hearing was scheduled, so as to afford appellant an opportunity to cross-examine the workers who testified at the August 15, 1986 hearing. At the December 17, 1987 hearing, appellant was represented by counsel. Richard S. Fiore (Fiore), appellant's executive vice-president, testified. The workers were also cross-examined. After the hearing, the examiner recommended to the Secretary that the proposed stipulation be adopted.

On January 20, 1989, the Secretary rejected the examiner's recommendation. The Secretary found appellant's employee, Robinson, on the Penn State Student Apartment Project (Project 3), performed only carpenter work, but was classified and paid by appellant at the lower laborer's wage. The Secretary also found that appellant had misclassified Robinson for all 163 hours of work on Project 3, totalling an underpayment of $766.00. The Secretary thus concluded that appellant had intentionally violated the PWA and accordingly, imposed debarment as prescribed under Section 11(e) of the PWA, 43 P.S. § 165–11(e).[4]

Appellant moved to disqualify (1) those Board members who (a) are employed by or who represent labor organizations which are members of intervenor, or (b) are employed by or represent construction industry employers who employ individuals represented by labor organizations which are members of the intervenor (a total of four members of the seven person board) and (2) one member, Augustus Hartinger, in particular, because of conflict of interest,

**4.** Section 11(e) of the PWA states in pertinent part that:
In the event that the secretary shall determine, after notice and hearing as required by this section, that any person or firm has failed to pay the prevailing wages and that such failure was intentional, he shall thereupon notify all public bodies of the name or names of such persons or firms and no contract shall be awarded to such persons or firms or to any firm, corporation or partnership in which such persons or firms have an interest until three years have elapsed from the date of the notice to the public bodies aforesaid.

inherent partiality and the appearance of bias. The Board denied appellant's motion.

Appellant filed a timely appeal. The Board affirmed the Secretary's decision with two members of the Board dissenting from the holding of the intentional violation. This petition for review followed.

Appellant makes three arguments to this Court: 1) that the findings of fact are not supported by substantial evidence; 2) that the conclusion of law that appellant's violation was intentional is erroneous; and 3) that the Board abused its discretion violating appellant's due process rights.

■ The Secretary made the following findings which appellant argues are not supported by substantial evidence.[5]

4. [Appellant] classified Mr. Robinson as a laborer for all of the hours which Mr. Robinson worked on Project (3).

\* \* \* \* \* \*

6. Mr. Robinson's duties on Project (3) consisted of rough framing which is carpenter's work.

7. While working on Project (3), Mr. Robinson performed no tasks, or duties, which may be classified as those of a laborer.

Appellant asserts that the Secretary was precluded from making such findings because he was bound by the credibility determinations of the hearing examiner. The hearing examiner did not find Robinson's testimony credible and relied on Fiore's testimony. Additionally, appellant contends that there is no other evidence in the record other than Robinson's testimony which supports the Secretary's findings and thus, Robinson's testimony must fail to qualify as substantial evidence.

5. The Board's findings of fact are materially indistinguishable from the findings of the Secretary. Appellant did not raise as an issue the independent findings of the Board and, therefore, this issue is waived. Pa.R.A.P. 1551; 2 Pa.C.S. § 703(a) and Darlington, McKeon, Schuckers and Brown, Pennsylvania Appellate Practice § 1551:2 (1986).

In considering appellant's argument that the Secretary must rely on the examiner's credibility determinations, we must address the proper role of the hearing examiner and Secretary. 34 Pa.Code § 211.1 provides that "[p]ursuant to 1 Pa.Code § 31.1 (relating to scope of part), the General Rules of Administrative Practice and Procedure, 1 Pa.Code Part II, are applicable to the activities of and proceedings before the Prevailing Wage Division, Department of Labor and Industry." No specific section in the PWA or the Code states that the Secretary is the ultimate fact-finder. Thus, the intra-agency review occurring here, must be analyzed as in *Northwestern Institute of Psychiatry v. Commonwealth,* 99 Pa.Commonwealth Ct. 213, 513 A.2d 495 (1986), applying the General Rules of Administrative Practice, 1 Pa.Code §§ 35.1–35.251. As Judge Doyle stated in *Northwestern,* under these procedures, the Secretary may appoint a hearing examiner. The hearing examiner prepares a proposed report, 1 Pa.Code § 35.202, which contains findings of fact and conclusions of law, 1 Pa.Code § 35.205. This *recommendation* is submitted to the Secretary. "Nowhere in these procedures is there *any* language that establishes the hearing attorney as the fact finder. His powers are limited to proposals and recommendations with the fact finding power remaining with the [Secretary]." *Northwestern,* 99 Pa.Commonwealth Ct. at 218, 513 A.2d at 498 (emphasis in original).

It is well established that the evaluation of a witness' credibility is for the fact finder who may believe all, part, or none of the witness' testimony. *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976). The fact finder makes the choice between conflicting evidence. *City of Hazleton v. Workmen's Compensation Appeal Board (Decusatis),* 35 Pa.Commonwealth Ct. 477, 386 A.2d 1067 (1978). Additionally, the fact finder is not required to accept testimony of any witness, even if the testimony is not contradicted. *Dunn v. Merck & Co.,* 12 Pa.Commonwealth Ct. 572, 317 A.2d 657 (1974), *vacated and remanded on other grounds,* 463 Pa. 441, 345 A.2d 601 (1975). Thus, appellant's argu-

ment that the Secretary's credibility determination is contrary to the record as a whole is without merit because "matters of credibility and evidentiary weight are within the exclusive discretion of the fact finder ... and are not within our scope of review." [6] *Carr v. Commonwealth of Pennsylvania, State Board of Pharmacy,* 48 Pa.Commonwealth Ct. 330, 334, 409 A.2d 941, 944 (1980) (*citing State Board of Medical Education and Licensure v. Grumbles,* 22 Pa.Commonwealth Ct. 74, 347 A.2d 782 (1975)). We find that the Secretary, like the Director in *Northwestern,* was not bound by the recommendation of the hearing examiner and the Secretary, therefore, is the ultimate fact finder. *See also Pennsylvania State Police v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 127 Pa.Commonwealth Ct. 436, 561 A.2d 1320 (1989).

■ Appellant's argument that Robinson's testimony does not constitute substantial evidence must also fail. Appellant asserts that no one corroborated Robinson's testimony. There is no requirement that other evidence corroborate evidence found credible by the Secretary. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support the conclusion under review. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). Upon a careful review of the record, we find that Robinson's testimony is such that a reasonable mind might accept as adequate and thus, that it supports the findings of the Secretary.

■ Appellant's second argument is that the Board erred as a matter of law in concluding that appellant's violation was intentional. Appellant asserts that the evidence does not demonstrate an intentional violation because 1) appellant always cooperated with the Division during investigations and corrected all errors brought to appellant's atten-

6. Our scope of review is limited to a determination of whether there is substantial evidence to support the Board's findings, whether an error of law was committed or whether any constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

tion; 2) appellant was unaware of the work Robinson performed; 3) Robinson, the sole worker found to be underpaid, did not complain to appellant about the wages; and 4) this was the first complaint to the Division by appellant's workers.

The intentional violation with which appellant is charged is set forth in Section 165–11(h)(1) of the PWA, 43 P.S. § 165–11(h)(1), which states:

The following shall constitute substantial evidence of *intentional* failure to pay prevailing wage rate:

Any *acts* of omission or commission done willfully or with a *knowing disregard* of the rights of *workmen* resulting in the payment of less than the prevailing wage rates.

(Emphasis added.)

Appellant contends that no intentional violation occurred because it cooperated with the Division and corrected all errors brought to its attention. Nowhere in the PWA does cooperation with the Division mitigate any act which displays a "knowing disregard to the rights of workmen."

Appellant now asserts 1) because it did not know of underpayment to Robinson, since he did not complain to appellant, and 2) because it could not monitor all workers all the time, that appellant's lack of knowledge demonstrates that it did not commit an intentional violation. Section 6 of the PWA, 43 P.S. § 165–6 states

Duty of Contractor. Every contractor and subcontractor *shall* keep an *accurate record* showing the name, craft and the *actual hourly rate of wage* paid to each workman employed by him in connection with public work and such record shall be preserved for two years from date of payment. The record shall be open at all reasonable hours to the inspection of the public body awarding the contract and to the Secretary.

(Emphasis added.)

■ Fiore testified that classifying an employee was a critical decision upon which he made the final determination. (Notes of Testimony (N.T.) of December 17, 1987

hearing at 203). But Fiore also testified that he did not break down the rates for hours workers spent on different job classification. (N.T. at 251.) Corporate officials cannot "turn their backs" or "look the other way," to avoid specific knowledge of failure to pay prevailing wage rates, and then plead that the failure was unintentional. *Dale D. Akins, Inc. v. Commonwealth of Pennsylvania, Department of Labor and Industry,* 16 Pa.Commonwealth Ct. 191, 329 A.2d 869 (1974). The very action of being oblivious to the obvious is, in itself, a knowing disregard to the rights of workmen which mandates severe penalties. *Id.*

The assertion that Robinson did not complain to it of underpayment of wages is irrelevant because this is not required by the PWA. Appellant additionally asserts that because Robinson is the *sole worker* found to not have received proper wages, that the penalty imposed by Section 165–11(h)(1) is improper. Section 165–11(h)(1) speaks of *acts* and *workmen* in the plural. Section 1902 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1902 requires in the interpretation of statutes that "the singular shall include the plural, and the plural, the singular ...," and therefore, this argument also must fail.

Upon a review of the record, we find that the Board did not err in its conclusion of law that appellant's violation was intentional.

■    Appellant's final argument is that it was denied due process of law. Appellant bases its first claim of due process denial on the ground that there was conflict of interest, evident partiality and the appearance of impropriety in the membership of the Board. Appellant requested the Board to disqualify four of its seven members, two who were members of intervenor, representing the labor union, and two who represented the construction industry. Because appellant is non-union, it asserts that with these members on the Board, a conflict of interest exists.

Section 165–2.2(c) and (d) of the PWA, 43 P.S. § 165–2.2(c) and (d) sets forth the composition of the Board.

(c) Of the seven members, one shall be a representative of an association of general contractors engaged full-time in the building construction industry, one. shall be a representative of an association of heavy and highway contractors engaged full time in the heavy and highway construction industry, one shall be a member of an historically established union representing labor in the heavy and highway construction industry, one shall be a member of an association representing a political subdivision, one shall be learned in the law and employed by the secretary, and one shall not be engaged in or employed by the building industry or by a public body but shall represent the general public. No member of the Advisory Board [see Section 165.2.1 of the PWA, 43 P.S. § 165–2.1] created by this amendatory act shall be appointed to the Appeals Board.

(d) Four members of the board shall constitute a quorum and the board shall neither sit for purposes of hearing any grievance nor make any determination unless a quorum is present.

Appellant has alleged no facts which demonstrate actual bias. The effect of appellant's argument would be for this Court to change the Board's statutorily-created composition, which is specifically established so as to avoid conflict while still retaining expertise in this area of the law. *See Borough of New Cumberland v. Police Employees of the Borough of New Cumberland,* 503 Pa. 16, 467 A.2d 1294 (1983). Under the circumstances of this case we see no reason to do so.

■ Additionally, appellant argues that Board member Augustus Hartinger specifically demonstrated bias. Mr. Hartinger's *office* refused service of one of appellant's briefs, on the ground that the company attempting service was non-union. Appellant asserts that this demonstrates bias on the part of Mr. Hartinger. In fact, Mr. Hartinger, initially, was unaware of the incident of refusal. When he was notified of what had occurred, he personally went to retrieve the documents. These facts do not demonstrate

behavior which would rise to a level of impropriety or even the appearance thereof. *See Kanjorski v. Department of Labor and Industry*, 44 Pa.Commonwealth Ct. 128, 403 A.2d 631 (1979).

Next appellant argues that the finding that it improperly classified its workers violates due process. This argument is based upon the allegation that the PWA's guidelines are impermissibly vague and that the Division gave it no guidelines under which to classify the workers. Appellant's own vice-president testified that its workers are expected to be able to distinguish between a journeyman's classification and a laborer's classification (N.T. at 227.) This sudden problem of classification by a veteran public contractor is specious.

█ ‚Appellant further contends it was denied due process because 1) of commingling of the adjudicatory and the prosecutorial functions and 2) of commingling of the adjudicatory and advisory functions.

This Court has acknowledged that a denial of due process may result when the *prosecutorial* and *adjudicatory* functions are commingled. *Pennsylvania Human Relations Commission v. Thorp, Reed and Armstrong*, 25 Pa.Commonwealth Ct. 295, 361 A.2d 497 (1976). The advisory role is effectively adjudicatory in nature and, therefore, also demands exclusivity from the prosecutorial function in order to avoid a denial of due process. *Board of Pensions and Retirement v. Schwartz*, 97 Pa.Commonwealth Ct. 539, 510 A.2d 835 (1986) (*citing Thorp*). Thus, Appellant's arguments of commingling actually will be considered as one.

This claim is based upon John Kupchinsky's positions as Deputy Chief Counsel for the Department and being "of counsel" for the Division. Appellant focuses on Mr. Kupchinsky's signing of the certificate of service from the Secretary's order asserting appellant intentionally violated the PWA. Appellant contends this creates, at the very least, the appearance of impropriety.

The Board asserts this argument was not presented before it and, therefore should be waived. Upon a close review of the record, we believe commingling was specifically raised.

In *Thorp,* we stated:

The most critical function in the prosecution and adjudication of administrative cases is in the *resolution of disputed facts* because the *findings of fact* which result from administrative proceedings are subject to only limited appellate review. The *fact finding process,* therefore, must be afforded the broadest dimensions of constitutional protection.

*Thorp,* 25 Pa.Commonwealth Ct. at 302, 361 A.2d at 501 (*citing Goldberg v. State Board of Pharmacy,* 49 Pa.Commonwealth Ct. 123, 410 A.2d 413 (1980)) (emphasis added). Due process rights are only threatened when the "coalescing of roles operates to prejudice, or has an opportunity to prejudice the *facts* to be found." *Schwartz,* 97 Pa.Commonwealth Ct. at 547, 510 A.2d at 839 (emphasis in original). Appellant does not advance any evidence that during the fact finding phase of this case the alleged commingling resulted in any unfairness. The issue, therefore, is one of law, and not a determination of facts, which we have the power to examine. *Thorp.* Upon a careful review of the record, we do not believe the conclusions in this case were affected by bias because of the alleged commingling of functions.

Appellant next argues it was denied due process because some of the Board members could not have had the opportunity to review the record before rendering their decision. The Board reached a decision immediately after the oral argument. Appellant presented no evidence that the Board did not have access to the record before oral argument, or that it failed to review the record, but simply asserts that because the record was so voluminous, most of the Board members could not have read the record prior to rendering

their opinion.[7]

We do not find that appellant has been denied due process. Accordingly, the order of the Board is hereby affirmed.

## ORDER

AND NOW, this 14th day of November 1989, the order of the Department of Labor and Industry, Prevailing Wage Appeals Board is hereby affirmed.

7. Although in *Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 99 Pa.Commonwealth Ct. 361, 512 A.2d 1355 (1986), we remanded to the Commission directing all of its eleven members, who admitted they had not read the record, to review the entire record before voting on whether or not to adopt its three-member hearing panel's findings, the evidence here does not demonstrate that the Board did not carefully review the record. This case may also be distinguished from *Pennsylvania State Police* because the Secretary here, is the ultimate fact finder, and not the Board, where in human relations cases, the Commission is the ultimate fact finder, and not the hearing panel.