585 A.2d 994

**LEONARD S. FIORE, INC., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, PREVAILING WAGE APPEALS BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1990.

Decided Jan. 17, 1991.

Richard DiSalle, R. Stanley Mitchel, Edmund M. Carney, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, for appellant.

John T. Kupchinsky, Richard C. Lengler, Dept. of Labor and Industry, Harrisburg, for appellee.

Irwin W. Aronson, Jerome Gerber, Handler, Gerber, Johnston & Aronson, Camp Hill, for intervenor Pennsylvania State Bldg. and Const. Trades Council—AFL–CIO.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

We are asked to address, for the first time, what acts constitute an intentional violation of the Prevailing Wage

Act. 43 P.S. §§ 165–1—165–17. The issues are presented through a construction contractor's appeal from a Commonwealth Court decision affirming the order of the Department of Labor and Industry, Prevailing Wage Appeals Board (Board), which affirmed the order of the Secretary of the Department (Secretary). 129 Pa.Cmwlth. 583, 566 A.2d 632. The Secretary determined that the appellant had intentionally violated the Prevailing Wage Act (PWA), 43 P.S. § 165–11(h), when it failed to pay prevailing wage rates to one worker, Terry Robinson. Consequently, the Secretary barred agencies of the Commonwealth from awarding public works contracts to appellant for three years.[1] The Secretary rejected a hearing examiner's recommendation that appellant did not intentionally violate the PWA.

■ We granted allocatur in this case to determine whether the Secretary's conclusion that the appellant intentionally violated the PWA is supported by substantial evidence. Specifically, we must determine whether a "reasonable mind" could conclude, after reviewing the whole record,[2] that appellant committed an act in a knowing or

1. 43 P.S. § 165–11(e) states in relevant part: "In the event that the secretary shall determine, after notice and hearing as required by this section, that any person or firm has failed to pay the prevailing wages and that such failure was intentional, he shall thereupon notify all public bodies of the name or names of such persons or firms and no contract shall be awarded to such persons or firms or to any firm, corporation or partnership in which such persons or firms have an interest until three years have elapsed from the date of the notice to the public bodies aforesaid."

2. Our scope of review of an administrative agency determination is limited to deciding whether it is supported by substantial evidence on the whole record. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 274, 501 A.2d 1383, 1387 (1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.,* 509 Pa. at 275, 501 A.2d at 1387 (*citing, inter alia, Consolidated Edison v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Reviewing the whole record includes reviewing evidence which both supports and detracts from the agency decision. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951). Once the court has determined that there is a "reasonable probability" of the fact found by the administrative agency it becomes *"functus officio."* Jaffe, *Judicial Review: Question of Fact,* 69 Harv.L.Rev. 1020, 1028 (1956).

willful disregard of the rights of workmen to be paid prevailing wages. *See* 43 P.S. § 165-11(h)(1).

Appellant, a construction contractor, was a general contractor on three public works projects [3] which were audited by the Prevailing Wage Division of the Department of Labor and Industry (Division) for compliance with the PWA. In 1986, the Division claimed that appellant had not paid prevailing wage rates to three (3) of the fifty-four (54) workers on these projects, Michael Matis, James Termin and Terry Robinson. These three workers testified before a hearing examiner appointed by the Secretary at a hearing held on August 15, 1986. No representative of the appellant attended that hearing therefore another hearing was held before the hearing examiner on December 17, 1987. In this hearing the three workmen were cross-examined. Also testifying were Michael Leard, a field investigator for the Division, and Richard S. Fiore, appellant's superintendent of all field construction. The Secretary eventually determined that appellant intentionally violated the PWA by failing to pay Robinson prevailing wage rates.

Robinson, who had worked for a five week period on the Student Apartments project, claimed that he had worked one hundred percent (100%) of the time as a carpenter but had been paid only at the laborer's wage rate for all his hours of work. The prevailing minimum wage at the time of these projects was $13.58 per hour for a laborer and $18.28 per hour for a carpenter. The PWA provides that "Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work." 43 P.S. § 165-5. He worked 163 hours over the five week period and was underpaid $766.00.

Robinson testified that the prevailing wage scales were posted on the appellant's trailers and therefore he was

3. These projects were: 1) New Elementary School, Hollidaysburg Area School District, Hollidaysburg, Blair County, PA.
2) Academic Activities Building, The Pennsylvania State University, State College, Centre County, PA.
3) Student Apartment Building, The Pennsylvania State University, Centre County, PA.

aware that he was not being paid the prevailing wage for a carpenter. He never complained to any of the appellant's corporate officials but instead complained to the Prevailing Wage Division of the Department of Labor and Industry after he was laid off.

Appellant contends that it did not violate the PWA because all of the carpenters who worked at the three public works projects also performed laborer tasks and therefore Robinson's claim that he worked all of his hours as a carpenter must be disbelieved. Nevertheless, even crediting appellant's argument as true, it remains uncontradicted that Robinson worked at least some or most of his hours as a carpenter and was paid entirely as a laborer. Therefore, it is ineluctable that appellant violated the requirement of paying prevailing wages. Whether appellant intentionally violated the PWA is another question.

Our Legislature has provided that "Any acts of omission or commission done willfully or with a knowing disregard of the rights of workmen resulting in the payment of less than prevailing wage rates" constitutes substantial evidence of intentional failure to pay prevailing wages. 43 P.S. § 165–11(h)(1). The Secretary determined that appellant intentionally violated the PWA because it was "aware" that Robinson worked solely as a carpenter and yet paid him a laborer's wage. Additionally, in dismissing the appellant's contention that its corporate officials were not "aware" of the misclassification of Robinson's hours, the Secretary stated that appellant's corporate officials were "being oblivious to the obvious...." *Citing Dale D. Akins, Inc. v. Department of Labor and Industry,* 16 Pa.Cmwlth.Ct. 191, 194, 329 A.2d 869, 871 (1974).

Furthermore, the Secretary determined that appellant did not adequately observe its employees in day-to-day functions and did not keep appropriate records of their activities as required by the PWA. *See* 43 P.S. § 165–6.[4] This, the

4. 43 P.S. § 165–6 states: "Every contractor and subcontractor shall keep an accurate record showing the name, craft and actual hourly rate of wage paid to each workman employed by him in connection

Secretary reasoned, was an act of omission which evidenced a willful and knowing disregard of the rights of workmen. This conclusion was based upon Richard S. Fiore's explanation of appellant's method of determining the wages to be paid to workmen. Appellant employed a job superintendent to "intermittently" observe the employees, record the tasks being performed, and estimate the time required to perform the task. The superintendent would then report this information to Richard S. Fiore on a weekly basis for classification and payroll purposes.

Appellant argues that the above stated determinations of the Secretary are not supported by substantial evidence. It first argues that it neither had actual knowledge of the misclassification of Robinson nor was the misclassification so obvious that it should have been aware of the misclassification. In reviewing the whole record we agree with the appellant that no "reasonable mind" could conclude that it was either actually aware or should have been aware of the misclassification.

First, Richard S. Fiore, who was ultimately responsible for the classification of each employee, testified that he was not aware of the misclassification. Appellant argues that it was reasonable to believe Richard Fiore because there is uncontradicted evidence of record that many employees on the project performed solely laborer work and therefore there was no reason to discover the superintendent's mistake. The Hearing Examiner chose to believe Richard Fiore's testimony as "logical, consistent, credible and persuasive." The Secretary determined that Robinson was credible. However, Robinson did not testify that Fiore, or any other of appellant's corporate officials, was aware of the misclassification of his hours and admitted that he never complained to the appellant. Therefore, there is no conflict in the credibility determinations of the Hearing Examiner and the Secretary as to Richard Fiore's aware-

with public work, and such record shall be preserved for two years from the date of payment. The record shall be open at all reasonable hours to the inspection of the public body awarding the contract to the secretary." 1961, Aug. 15, P.L. 987, § 6.

ness of the misclassification. Furthermore, since the Secretary did not reverse the Hearing Examiner's finding that Richard Fiore testified credibly, but merely found Robinson to be credible as well, we must accept the Hearing Examiner's credibility determination with regard to Richard Fiore's awareness of the misclassification. See 1 Pa.Code § 35.206 which states that the report of a hearing examiner shall be examined as part of the whole record.[5]

Secondly, there is no evidence of record to support a conclusion that appellant's corporate officials should have been aware of the misclassification. The Secretary concluded that the misclassification of Robinson was obvious to the appellants.

> Corporate officials cannot "turn their backs" or "look the other way," to avoid specific knowledge of failure to pay prevailing wage rates, and then plead that the failure was unintentional. *Dale D. Akins, Inc. v. Commonwealth of Pennsylvania, Department of Labor and Industry*, 16 Pa.Commonwealth Ct. 191, 329 A.2d 869 (1974). The very action of being oblivious to the obvious is, in itself, a knowing disregard to the rights of workmen which mandates severe penalties. *Id.*

566 A.2d at 636.

This proposition of law, although appropriate in *Dale D. Akins*, does not apply here. In *Dale D. Akins*, the Secretary's findings of fact which were affirmed by the Commonwealth Court revealed that the contractor was aware of its violations and attempted to hide them from the Prevailing Wage Division by telling its workers to "lie" or "run" from Division investigators. It was further revealed that the contractor paid eleven different workers hourly rates lower than the lowest prevailing rate certified.

Such is not the case here however. It is uncontradicted that appellant fully cooperated with Division investigators.

---

5. The General Rules of Administrative Practice and Procedure, 1 Pa.Code Part II, are applicable to the activities of and proceedings before the Prevailing Wage Division, Department of Labor and Industry. 34 Pa.Code § 211.1.

Additionally, Robinson was paid the prevailing wage that many other workmen on the same job were being paid, and therefore the appellant's corporate officials had no way of knowing of the job superintendent's mistake. The court even recognized in *Dale D. Akins* that there would be ample justification for the lack of awareness of corporate officials if the job superintendent's actions were "clandestine." 16 Pa.Commonwealth Ct. at 193, 329 A.2d at 870.

However, the PWA does not require that a contractor be either actually aware or constructively aware of a particular violation of the Act. Our Legislature has provided that "Any acts of omission or commission done willfully or with a knowing disregard of the rights of workmen resulting in the underpayment of less than prevailing wage rates" constitutes substantial evidence of intentional failure to pay prevailing wages. 43 P.S. § 165–11(h)(1). Therefore, all that is required is evidence that the contractor performed or failed to perform any act which it knew to be in disregard of workmen's rights. The Secretary believed that appellant's intermittent observation of workers was such an act.

■ Since appellant itself admits that it intermittently observed its workers, the only question remaining for our consideration is whether a reasonable mind could conclude that in intermittently observing it's workers the appellant knowingly or willfully disregarded workers rights.

Initially we must note that the PWA does not proscribe the intermittent observation of employees nor does it require that they be monitored each and every minute of the work day. Nor does the PWA state that failure to keep an "accurate record" is an intentional violation. If it were, contractors would be found to have intentionally violated the act for mere mistakes. Only if there were evidence that the appellant knew its records were inaccurate and yet persisted in keeping its records in such a fashion could there be found to be a willful or knowing disregard for the rights of workmen.

The Commonwealth Court determined that since Fiore testified that classifying an employee was a critical determination upon which he made the final decision, and because he did not break down the precise amount of time a worker spent at a particular task, but would instead round out the time to the nearest hour, that this was evidence of a knowing disregard of workers' rights. However, this evidence is greatly outweighed by other evidence of record, and therefore, the determination of an intentional violation is not supported by substantial evidence. *See Kent v. Schweiker*, 710 F.2d 110 (3d Cir.1983).

Although the appellant had been audited by the Division several times prior to the audit which eventually gave rise to this appeal, the appellant's method of monitoring its workers for classification purposes was never questioned. Michael Leard, the field investigator for the Division in this audit, testified that only the three workmen previously mentioned, of the fifty-four (54) workmen on the projects, complained about not being paid prevailing wage. These three men each admitted that they did not complain to the appellant. Therefore, it is reasonable to conclude that appellant's method of rounding to the nearest hour the number of hours worked did not create a problem of which appellant was aware.

Furthermore, it is undisputed that appellant paid a higher wage rate than the prevailing wage rate for a substantial amount of work that was performed at the projects in question. As an example, it paid for thousands of man-hours of landscaping work at the higher laborer rate. In fact one of the three complaining workmen, James Termin, admitted that he performed 140 hours of "layout" work but was paid at the higher wage rate of a laborer. This evidence strongly refutes the implication that appellant rounded workers' hours to the nearest hour to deprive the worker of proper pay to save itself money.

The overwhelming weight of the evidence leads this Court to the conclusion that the misclassification of Robinson resulted from no act of the appellant which was in knowing

or willful disregard of workers rights, but resulted instead from the negligence of a job superintendent. The appellant should not suffer the pain of a three year debarment due to the negligence of an employee whose negligence it was unable to discover. The order of the Prevailing Wage Appeals Board finding an intentional violation of the PWA is hereby reversed.[6]

The orders of the Commonwealth Court and Department of Labor and Industry, Prevailing Wage Appeals Board, are reversed.

LARSEN, J., files a dissenting opinion.

CAPPY, J., files a dissenting opinion in which LARSEN and ZAPPALA, JJ., join.

LARSEN, Justice, dissenting.

I dissent and would affirm on the basis of the Commonwealth Court Opinion. *Leonard S. Fiore, Inc. v. Commonwealth of Pennsylvania, Department of Labor and Industry, Prevailing Wage Appeals Board,* 129 Pa.Commw. 583, 566 A.2d 632 (1989).

CAPPY, Justice, dissenting.

I respectfully dissent from the majority decision. I am of the belief that there was substantial evidence to support the conclusion of the Board affirming the determination of the Secretary that appellant intentionally violated the Prevailing Wage Act ("Act"), 43 P.S. § 165-1 et seq.

43 P.S. § 165-11(h)(1) provides that "Any acts of omission or commission done **willfully or with a knowing disregard** of the rights of workmen resulting in the payment of less than prevailing rates" shall constitute substantial evidence of intentional failure to pay prevailing wage rates.

**6.** Appellee's motion to suppress the portions of appellant's reply brief which reargue the issues previously raised and argued in appellant's brief is granted pursuant to Pa.R.A.P. 2113. Appellee's motion to strike the Designation and Contested Items of Volume IV is granted. However, this Court appropriately considered Volumes I, II, III, and IV of the Reproduced record, except for the Contested Items in Volume IV, as timely filed.

In applying this standard, the majority has seen fit to shield appellant, a "hands-on" contractor, from liability by attributing the willful or knowing disregard of a worker's rights to the negligence of his subordinate job superintendent. While I agree with the majority's conclusion that the knowing or willful disregard of the worker's rights resulted from the negligence of a job superintendent, I cannot agree with its conclusion that appellant was unaware of or unable to discover the misclassification and resultant underpayment.

The Secretary, in reviewing this case, determined that appellant was aware of Robinson's work as a carpenter and nevertheless recorded Robinson's time as having been spent as a laborer. Thereafter, in reliance upon *Dale D. Akins, Inc. v. Department of Labor and Industry*, 16 Pa.Commw. 191, 329 A.2d 869 (1974), the Secretary stated that "this record keeping not only violates the Act and Regulations but indicates a motivation for such actions," and concluded that appellant intentionally violated the Act.

In *Akins*, the Commonwealth Court held that:

[c]ertainly it cannot be the law that corporate officials can "turn their backs" or "look the other way," thus avoiding specific knowledge and then plead the improper payments were not intentional. The very actions of being oblivious to the obvious are, in themselves, a knowing disregard of the rights of workmen which mandates the very severe penalties here involved.

The majority, however, has purported to distinguish *Akins* from the case *sub judice* by stating that in *Akins* "the contractor was aware of its violations and attempted to hide them from the Prevailing Wage Division by telling its workers to 'lie' or 'run' from Division investigators." Unlike the majority, I do not believe that *Akins* is distinguishable from the case *sub judice*. In *Akins*, the blame was likewise placed on one job superintendent who did hiring, set the wage rates to be paid, and did not properly or accurately report the work being done by the workmen here

involved. There is no indication in *Akins*, as the majority claims, that the contractor found liable was personally involved in the violations or the attempts to hide them. Rather, the Commonwealth Court determined that it could not conclude that the Secretary was without basis for saying that the top officials of the company had the requisite knowledge to make this action intentional based upon the improper conduct surrounding the job site, together with the fact that the principle owner visited the job from time to time.

Our standard of review is limited to a determination of whether there is substantial evidence to support the Board's findings, whether an error of law was committed or whether any constitutional rights were violated, 2 Pa.C.S. § 704,[1] *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). I conclude that there was sufficient evidence to support the determination of the Secretary, as affirmed by the Board, that appellant had the requisite knowledge to support the conclusion that he intentionally violated the Act. This determination is in accord with *Akins*.

Specifically, I rely upon the fact that: Appellant had prior prevailing wage work experience; appellant made the final determination on the critical employee classification decisions; appellant did not break down the rates for hours workers spent on different job classifications; appellant exhibited a pattern of ignoring or refusing to abide by statutory and regulatory payroll record keeping requirements and of failing to properly classify workers; and appellant was the general superintendent in charge of all field construction; together with the record evidence showing the degree to which appellant was involved with this project on a day to day basis as the general contractor.

I would affirm the Commonwealth Court.

LARSEN and ZAPPALA, JJ., join in this dissenting opinion.

1. *Administrative Agency Law*, 2 Pa.C.S. § 704, 1978, April 28, P.L. 202, No. 53, § 5.