523 A.2d 1196

Conrad Washington, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 8, 1987, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Simon W. Tache, Simon W. Tache, P.C.,* for petitioner.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, April 8, 1987:

A replaying of a traditional conflict upon the high seas has led to the appeal presently before the Court.

Conrad Washington (petitioner) appeals an order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's decision finding him ineligible for unemployment compensation on account of willful misconduct.[1]

Petitioner was previously employed as a seaman (watchstander QMED[2]) at a rate of pay of Seventeen Hundred Dollars ($1700.00) per month on board the M.V. Chestnut Hill operated by Keystone Shipping (employer), when he was discharged for failing to report for watch in violation of the employer's rules.

Clearly posted in the crews' lounge and mess was a notice which read in pertinent part:

Members of the crew of this vessel may be discharged without notice for violation of any of the following rules:

. . .

11. Failure to report to duty except for causes beyond the control of the crew member.

. . .

13. Introduction, possession, or use of intoxicating liquors or habit-forming drugs, on the property of the Owner.

. . . .

At the hearing before the referee, a copy of the notice was entered into evidence without objection after petitioner admitted having read the notice and being aware of its contents.

The ship's log indicates that a letter of dismissal was prepared on January 12, 1985, and signed by the master of the vessel. This letter stated the following:

---

[1] See Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] The acronym is an abbreviation of "qualified member of the engine department."

TO: Mr. Conrad Washington
      Letter of Discharge
      Conrad Washington—QMED
      SS KEYSTONE SHIPPING

---

You have been employed as watchstanding Q.M.E.D. from Dec. 19, 1984 to Jan. 13, 1985 and are being discharged for failure to report for watch at 2000 hrs. on Jan. 11, 1985.

You have failed to notify the launch service of your inability to return to vessel at proper time, so the vessel could be informed.

Prior to this, on Jan. 3, 1985, you admitted to the Master to having a bottle of spirits in your room.

The Master warned you of the seriousness of this offense, and allowed you to dispose of the bottle without penalty.

Since both of your offenses are offenses listed in Form No. 312, which is posted for the benifit [sic] of all hands; no warning is required to prior of [sic] your discharge.

The ship's log indicates that the petitioner, in addition to being terminated, was also fined Sixty-one Dollars and Eighty-eight Cents ($61.88), the overtime cost of his relief. On January 14, 1985, the contents of the letter were read to petitioner and he was placed off the ship when it arrived at its first domestic port in the United States.

Preliminarily, we must consider whether the discharge letter, prepared by the captain and witnessed by two members of the crew, was properly admitted into evidence over the hearsay objections of petitioner's attorney. The discharge letter was brought to the hearing by RosaLee Bringhurst, the employer's claim representative, whose testimony established that she was a prop-

er custodian of documents. It is clear from the text of the letter that it was made in the regular course of business. The letter itself is a discharge of a seaman, reduced to writing, a requirement of both the management/labor contract and the law of the sea. The Uniform Business Records as Evidence Act (Act), 42 Pa. C. S. §6108(b), provides that:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

This document, prepared by the master of a vessel, and witnessed by David N. Benson, the vessel's chief engineer, clearly has an indicium of reliability so as to justify its admission. *See Wilkins v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 367, 502 A.2d 283 (1985).

Furthermore, the copies of the ship's log were not objected to[3] by petitioner's attorney at the hearing. The log entry corroborates the contents of the letter as follows: "QMED Conrad J. Washington, F 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 failed to return to the vessel for his regularly scheduled 2,000 — 2,400 watch. For this offense, Washington is fined $61.88, the Overtime cost of his reliefs." (Dated

---

[3] *See Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976), wherein this Court held that, in administrative proceedings, hearsay evidence admitted without objection will be given its natural probative effect and may support a finding of the Board if it is corroborated by any competent evidence in the record, but that a finding of fact based solely on hearsay will not stand.

January 11, 1985). Ships' logs have traditionally been held to have the highest degree of reliability and are admissible in judicial proceedings. *See* 5 *Wigmore on Evidence* §1641 (Chadbourn rev. ed. 1974).

Petitioner, while admitting possession of the contraband liquor, gave a strikingly different account of the entire incident. Petitioner testified that he was subject to harassment and unfair treatment at the hands of the Chief Mate, David R. Smith. Petitioner further testified that Mr. Smith had earlier threatened to "throw him in irons" and the petitioner stated that he was placed in genuine fear for his physical safety. Therefore, on December 27, 1984, he contacted the Vice Consul of the United States of America, located in Port of Spain, Trinidad, where the ship was temporarily docked, and requested that an investigation be conducted concerning his claim of harsh and barbarous treatment toward a seaman. In essence, it is petitioner's contention that as of January 2, 1985, the petitioner has necessitous and compelling reasons to voluntarily terminate his employment with employer and, therefore, employer was under an obligation to transport him back to his home port.

In support of his contentions, petitioner submitted a document indicating that there was contact between the Vice Consul and petitioner.[4]

---

[4] Dear Mr. Washington:

Thank you for your telephone call yesterday. I regret that the incident we discussed in December has still not been settled. Let me briefly sketch the events as I remember them:

On December 27, 1984, you called me at the Embassy in Port of Spain to complain that you had received unfair treatment from Chief Mate David R. Smith. You mentioned that this was only the latest in a series of quarrels with Mr. Smith, and asked that I assist in having you removed from the ship because of your belief that Mr. Smith would

Petitioner further contends that he was under no obligation to stand the watch, as he was merely being transported home, and that the ship's log entries were incorrect.

We must note that the Board is the ultimate fact-finder in appeals such as these, *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985), and that we must affirm the Board's decision unless there is an error of law or the Board has made findings of fact which are not supported by substantial evidence. *See Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

The record indicates that the Board, in affirming the referee, made an independent review of the transcript

---

succeed in punishing you unfairly. You also mentioned fears that the argument would end in your injury or death. In light of my consular responsibilities toward American seamen, I agreed to investigate your complaint of harsh treatment if you could not reach an amicable settlement with Captain Hayes. I then asked that you have Captain Hayes contact me either at the Embassy or at my residence.

That evening, Captain Hayes attempted to reach me at home before I returned from the Embassy. I was unsuccessful in my attempts to reach Captain Hayes aboard the M/V Chestnut Hill, and he did not call again.

On December 28, you informed me that you had agreed with Captain Hayes to leave the ship in Delaware. You stated that a consular investigation would not be necessary, and promised to send me a letter documenting your problems with Chief Smith. I attach a copy of this letter for your records.

I hope this letter proves useful, and wish you the very best of luck in the future.

Sincerely,
Jack D. Robinson
Vice Consul of the
United States of America

in this matter and prepared its own findings of fact and conclusions of law. In essence, the Board rejected most of petitioner's testimony and, instead, relied upon the events as recorded in the ship's log and the letter of termination. Questions of credibility, resolutions of conflicts in the evidence presented, and a determination of the weight to be given the evidence are matters for the Board to determine. *Roach v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 424, 376 A.2d 314 (1977). The burden of proving that a termination was not voluntary rests upon the claimant. *Bowman v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980). The Board very explicitly found that the claimant did not voluntarily terminate his employment and, even if he did, he did not have necessitous and compelling cause to do so.

Our review of the record indicates that there is sufficient evidence to support the Board's conclusions and, therefore, we must affirm.

ORDER

AND NOW, this 8th day of April, 1987, the order of the Unemployment Compensation Board of Review, dated July 15, 1985, in the above-captioned matter, is hereby affirmed.