IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney P. Holmes,
             Petitioner       :
                                 :
          v.                 :
                                 :
Unemployment Compensation   :
Board of Review,              :    No. 2393 C.D. 2013
             Respondent    :    Submitted: June 20, 2014

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY              FILED: August 11, 2014

        Sidney P. Holmes (Claimant) challenges the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]

        The facts, as initially found by the referee and confirmed by the Board, are as follows:

> 1.   The Claimant was last employed as a full-time Communications Director earning $67,000 per year with Public Citizens for Children and Youth. The Claimant began employment sometime in April 2008, and last worked on February 11, 2013.
> ….

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

3.	The Employer maintains an employee handbook, which it provides to all employees upon initial hire, which contains various policies including a sick leave benefits policy which contains the pertinent language: 'Employees who are unable to report to work due to illness or injury should notify their direct supervisor before the scheduled start of their workday if possible. The direct supervisor must also be contacted on each additional day of absence.'

4.	The Claimant was, or should have been, aware of the Employer's sick leave benefits policy described above.

5.	Although the Employer's written policy contained in their employee handbook provided that employees must contact their direct supervisor when calling off due to illness or injury, it was the Employer's past practice to allow employees to leave a voice mail [sic] message if they were calling off due to a short term illness or injury.

6.	On the Claimant's last day of work the Claimant suffered a reoccurrence of a previous back injury.
….
8.	The Claimant did not report to work after February 11, 2013.

9.	The Claimant contacted the Employer and left a message on the voice message system each workday after February 11, 2013, up until, on or around, March 4, 2013.
....
11.	The Claimant's direct supervisor was, Ms. Brenda Cooper (Cooper), the Employer's Executive Director.

12.	The Claimant at no point during his absence contacted Cooper to report his absence or discuss the reasons for his absence.

13.	On February 19, 2013 and again on February 27, 2013, Cooper e-mailed the Claimant to request a note and an update on his status regarding his return to work.

2

14. The Claimant had access to e-mail and communicated with another individual from the Employer's Board via e-mail.

15. The Claimant did not respond to either of Cooper's two e-mails requesting a medical note and a status update.

16. On, or around, February 19, 2013, the Claimant e-mailed a Ms. Gail Smith (Smith) and requested a copy of the Employer's employee handbook.

17. Ms. Smith mailed a copy of the employee handbook shortly thereafter.

18. Ms. Cooper never received any verbal or written communication from the Claimant other than the daily voice messages the Claimant left on the voicemail system.

19. After the Claimant exhausted all entitlement to sick and vacation leave, which the Employer extended for three additional grace days, and failed to contact the Employer as requested, Cooper decided to discharge the Claimant.

20. By letter dated March 5, 2013, Cooper notified the Claimant he was discharged effective March 4, 2013, for failure to follow prescribed procedures for use of sick leave and job abandonment.

Referee's Decision, September 6, 2013, (Decision), Findings of Fact (F.F.) Nos. 1, 3-6, 8-9, and 11-20 at 1-2.

The referee determined:

[T]he Referee finds that the Employer has presented sufficient competent evidence to establish the existence of an Employer rule regarding reporting absences to the direct supervisor of which the Claimant was, or should have been, aware and that the Claimant violated the rule. Additionally, the Referee finds that the Claimant's failure to respond to Cooper's emails or to contact her at all during his extended absence to represent a

3

disregard of the standards of behavior the Employer had a right to expect of the Claimant regardless of any rule.

Decision at 3-4.

The referee also concluded:

Regardless of whether the Claimant received and was aware of Ms. Cooper's e-mails directing him to contact her, the Referee must find the Claimant's failure to contact the Employer directly to report and discuss his extended absence was a knowing and intentional disregard of standards of behavior which the Employer has the right to expect of an employee. The Claimant has failed to establish good cause for said behavior and benefits must be denied under Section 402(e) of the Law.

Decision at 4.

The Board affirmed the referee's findings of fact and determined they were supported by substantial evidence.

Claimant essentially contends that the Board erred when it ignored Claimant's contention that Public Citizens for Children and Youth (Employer) submitted false reasons for Claimant's termination and that the Board erred when it failed to consider Employer's witnesses perjured their testimony[2] when it made its credibility determination.[3]

---

[2] Claimant contends that Employer's witnesses committed perjury during their testimony concerning the reasons for Claimant's termination.

[3] This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact were not supported by substantial evidence. Lee Hospital v. Unemployment Compensation Board of Review, 637 A.2d 695 (Pa. Cmwlth. 1994).

4

Claimant was denied benefits pursuant to Section 402(e) of the Law, which provides that an employee shall be ineligible for compensation for any week: "[I]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work…" 43 P.S. § 802(e). Whether a Claimant's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. Lee Hospital v. Unemployment Compensation Board of Review, 589 A.2d 297 (Pa. Cmwlth. 1991). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an Employer's interest, deliberate violation of rules, disregard of standards of behavior which an Employer can rightfully expect from the employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the Employer's interest or employee's duties and obligations. Frick v. Unemployment Compensation Board of Review, 375 A.2d 879 (Pa. Cmwlth. 1977).

The Employer bears the burden of proving that it discharged an employee for willful misconduct. City of Beaver Falls v. Unemployment Compensation Board of Review, 441 A.2d 510 (Pa. Cmwlth. 1982). Employer also bears the burden of proving the existence of the work rule and its violation. Once the Employer establishes that, the burden then shifts to the Claimant to prove that the violation was for good cause. Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383 (Pa. 1985).

Claimant does not dispute that Employer had a sick leave policy of which he was aware. Claimant admitted receiving a copy of the employee

5

handbook containing the absentee policy when he was hired and again in February 2013, during his absence. While Employer admitted that in past practice it was acceptable to leave a voice message with the office manager to report absenteeism, Employer expected employees to contact their direct supervisor to report and discuss any long-term absences. It is undisputed that Claimant did not contact his supervisor at any time during his absence.

Claimant testified:

Claimant's Lawyer (CL): And despite what the handbook stated regarding the policy of calling out, the policy that was in practice for the five years, where you called the number and leave [sic] a message.
Claimant (C): Leave a message with Steven or Gail.

CL: And during you [sic] five years that you're with PCCY [Employer], were you ever instructed to not [sic] Gail or Steve but to call the supervisor directly?
C: No, it was call Steven or Gail. Ms. Anoff was very explicit about that.

CL: Okay. And have you ever in the five years you were employed with PCCY have [sic] write ups regarding not showing up to work or not returning to work?
C: No.
….
Employer's Lawyer (EL): Now, that was more for the day or two, if a person woke up and didn't – and felt under the weather, is that correct?
C: That was the policy. I had never been out for that period of time, so I couldn't tell you.
….

6

EL: And you were out an extended period of time and you didn't feel any obligation to communicate directly with your supervisor Ms. Cooper, you know, when your – when you were planning to get back in the office, you didn't feel that obligation?

C: I just answered that phone call, I just left a voicemail message and I sent her my doctor's notes.

EL: But you left a message, you didn't communicate with Ms. Cooper directly?

C: No.
….

EL: But the handbook says that you have to notify your direct supervisor, correct?

C: Yes.

EL: And you didn't do that.

C: But that's not what the procedure was – that was not the procedure. I've been there five years.

Notes of Testimony (N.T.) at 54-61.

The Employer's witness and Claimant's direct supervisor, Ms. Cooper, gave the following testimony:

Referee (R): All right. Now how would the Claimant be aware of this policy Ms. Cooper?

Employer Witness (EW1): When people are new employees they get a copy of the employee manual. And the employee manual was in place when Sid [Claimant] came to work on (inaudible) is not here, so Ms. Smith would be able to attest to Sid's receipt of that manual when he was hired. On February 19th Mr. Smith – Mr. Holmes asked for another copy of the manual and received that, so he had it when he was employed and then he asked for a copy on the 19th and received it.
….

7

> R:        If the Claimant would report off to Ms. Smith would that be, would you consider that to be in compliance with the Employer's policy?
>
> EW1:      I might sir if it was for one day or two days, for an extended period of time there's nobody in the office who I would expect to take extended time off without communicating with their direct supervisor.
>
> ….
>
> EW1:      And I emailed him on two occasions asking him to apprise me of his illness, what it was, what was going on, when he would be returning to work, no response.  So then, still no response.  On two occasions I emailed him.  On one occasion, I called him.

Notes of Testimony, September 3, 2013, at 14, 19, 23.

Claimant's sole argument is that he never received notice to contact his supervisor regarding his absence.  However, Employer established through the credible testimony of Ms. Cooper that employees were informed of the rule in the employee manual of which Ms. Cooper testified Claimant had a copy.  In unemployment compensation proceedings, the Board is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence.  Unemployment Compensation Board of Review v. Wright, 347 A.2d 328 (Pa. Cmwlth. 1975).  Findings of fact are conclusive upon review provided that the record, taken as a whole, provides substantial evidence to support the findings.  Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829 (Pa. 1977).

Employer's witness, Ms. Cooper, testified that she emailed Claimant twice, to his work and home email accounts, requesting a note and an update on his status regarding his return to work.  Claimant argues that he never received the

emails, but did admit to using his email account during his sick leave. Claimant contends that he sent medical documentation to his direct supervisor regarding his absence, which Ms. Cooper denied receiving. The Board found Employer's witness to be credible on this issue. Claimant's behavior constituted a knowing and intentional disregard of standards of behavior which Employer had the right to expect of an employee.[4]

Claimant failed to contact his Employer regarding Claimant's prolonged absence and failed to establish good cause for his actions. Therefore, benefits were properly denied pursuant to Section 402(e) of the Law.

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

---

[4] In his brief, Claimant repeatedly argues that Employer's witnesses lied. Once again, a determination of the veracity of a witness is left to the Board as factfinder.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney P. Holmes,
               Petitioner        :

         :

         v.          :

         :

Unemployment Compensation    :

Board of Review,         :      No. 2393 C.D. 2013

               Respondent    :

# **O R D E R**

AND NOW, this 11th day of August, 2014, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

                         _____

                         BERNARD L. McGINLEY, Judge