[J-1-2021] [MO: Todd, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CAITLIN QUIGLEY, | : | No. 20 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | 1/28/2020 at No. 1449 CD 2017 |
| v. | : | vacating/remanding the Order |
| | : | entered on 8/8/2017 by the |
| | : | Unemployment Compensation Board |
| UNEMPLOYMENT COMPENSATION | : | of Review at No. B-17-09-G-2764 |
| BOARD OF REVIEW, | : | |
| | : | ARGUED: March 9, 2021 |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                  **DECIDED: November 17, 2021**

The hallmarks of procedural due process are "notice and an opportunity to present evidence and legal argument." *Vann v. UCBR*, 494 A.2d 1081, 1084 (Pa. 1985). The Majority agrees with the Commonwealth Court that Quigley's procedural due process rights were violated when the Unemployment Compensation Board of Review ("Board") sua sponte concluded that she was ineligible for unemployment compensation benefits, where the issue of her eligibility was not raised in her appeal to the Board or below. Maj. Op. at 1.[1] However, the record reveals that a "sua sponte" characterization of the Board's

---

[1] At the outset, I am troubled by the Commonwealth Court's request for supplemental briefing from the parties to address the Board's scope of authority. Although neither party raised that issue, this additional issue led to the Commonwealth Court's decision, which this Court agreed to review and a majority of this Court now affirms. *Quigley v. UCBR*, 225 A.3d 914, 919 (Pa. Commw. 2020); *Quigley v. UCBR*, 237 A.3d 410 (Pa. 2020) ("Did the Commonwealth Court violate the Unemployment Compensation Law and this Court's

review of Quigley's eligibility is incorrect.  The issue of eligibility was raised with the filing of Quigley's claim and expressly ruled upon by both the Department of Labor and Industry ("Department") and the referee.  According to the Unemployment Compensation Law ("UCL")[2] and the Department's regulations, the Board was required to review the referee's decision, which included the issue of Quigley's eligibility for benefits.  It was under no obligation to advise the claimant that it would be exercising its statutory authority to conduct this review.  Therefore, it was not required to give notice that the issue of Quigley's eligibility was subject to its review.  Furthermore, Quigley had an opportunity to be heard on her claim before the referee, and the Board was not required to provide a hearing to take additional evidence.  Accordingly, I dissent.

The threshold issue attending any claim for unemployment compensation benefits is eligibility, as many exclusions may apply that could foreclose the receipt of benefits, including, in this case, self-employment.  43 P.S. § 802 (Ineligibility for compensation).[3]

---

decision in *Peak v. Unemployment Comp. Bd. of Review*, 509 Pa. 267, 501 A.2d 1383 (1985) by misapplying *Lyness v. State Bd. of Med.*, 529 Pa. 535, 605 A.2d 1204 (1992) to improperly limit the scope of the Board's review solely to the issues raised by the appellant?").  Respectfully, the Commonwealth Court does not have the authority to sua sponte raise an issue for its own consideration.  It must decide an appeal as it is filed.  In my view, the appropriate disposition of this appeal is to vacate the decision of the Commonwealth Court and remand for a decision based on the issues raised by the appellant.  Because the Majority decides the merits of the issue raised by the Commonwealth Court, I write to express my dissenting view.

[2]  Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–919.10.

[3]  Section 402(h) of the UCL, 43 P.S. § 802(h), is known as the self-employment exclusion and contains the sideline business exception:

An employe shall be ineligible for compensation for any week--

* * *

The Department had to consider the income from Quigley's editing business to determine both her eligibility (whether sideline business exception to self-employment exclusion applied) and the calculation of benefits (reduction of benefits based on the amount of sideline business income). 43 P.S. §§ 802(h), 804. Because, in this context, the income inquiry relates to eligibility and the rate of compensation, I agree with Judge Cohn Jubelirer that review of one component necessarily involves review of the other. *Quigley v. UCBR*, 225 A.3d 914, 929 (Pa. Commw. 2020) (Cohn Jubelirer, J., dissenting) ("An appeal as to one is an appeal to both.").

Quigley raised the eligibility issue when she disclosed her editing business to the Department, Transcript of Testimony, 5/9/2017 (hereinafter, "T.T."), Exhibit # 4 (Claimant Questionnaire, 4/11/2017, ¶ 6), and she had the burden of proving that the income from her editing business did not disqualify her from receiving benefits. *Kress v. UCBR*, 23 A.3d 632, 636 (Pa. Commw. 2011). The Department recognized the eligibility issue — "There is a sideline business eligibility issue." T.T., Exhibit # 3 (Notice of Determination,

---

> (h) In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. § 802(h). *See Lowman v. UCBR*, 235 A.3d 278 (Pa. 2020) (setting forth test for determination of self-employment under Section 802(h)).

4/12/2017, ¶ 1). Based solely on Quigley's application, which asserted the pure conclusion of law that she engaged in a sideline business, the Department expressly resolved the eligibility issue in her favor, finding that she was engaged in a sideline business, not self-employment, and, therefore, she was "eligible for benefits beginning with waiting week ending 4/8/2017 under Section 402(h) of the Pennsylvania UC Law." T.T., Exhibit # 3 (Notice of Determination, 4/12/2017, at 1). Because Quigley received income from her self-proclaimed sideline business, the Department then calculated the amount of income to be deducted from her weekly unemployment compensation benefits, concluding that a "prorated weekly deductible amount [of] $237" was required. *Id.* (Notice of Determination, 4/12/2027, ¶ 4).

On appeal, Quigley challenged only the calculation of the deduction based on her 2016 income from editing. Petition for Appeal, 4/18/2017, Attachment (Email to ra-li-uc-appeals@pa.gov, April 18, 2017). The record before the referee consisted only of the "UC File Folder." T.T., at 1. It confirms the referee's understanding that the income generated from Quigley's editing business was relevant to her eligibility and to the rate of compensation. The referee's "Notice of Hearing" contained the following text: "SPECIFIC ISSUES to be considered in this appeal … #18 - Section 402(h)–Whether claimant is engaged in self-employment." T.T., Referee Exhibit #1 (Notice of Hearing, 4/26/2017, at 1). In reviewing Quigley's appeal, the referee further stated the issue as: "Is the claimant's income from self-employment deductible from UC, and, if so, to what extent?" Referee's Decision & Order, 5/11/2017, at 2.

The Majority's construct of this record ignores the fact that the Notice of Hearing specifically indicated that the claimant's engagement in self-employment, and therefore

her eligibility, was at issue. Likewise, the first part of the second issue noted by the referee – "is the claimant's income from self-employment deductible from UC" — squarely requires a determination that Quigley was engaged in a sideline business and therefore eligible, leading to the second part of the issue — "and, **if so**, to what extent." In my view, to read the Notice of Hearing and the referee's decision to exclude the eligibility issue requires a complete contortion of words.

Nothing in the record supports the Majority's assertion that the referee did not rule on the eligibility issue or provide her "own independent reasoned decision" regarding eligibility. Maj. Op. at 31. To the contrary, the record indicates that the referee made findings of facts and discussed the relevant law, including the self-employment exclusion, the sideline business exception, and the computation of weekly earnings provisions, and then made conclusions of law based on her application of the law to the facts. T.T., Exhibits ## 4, 5; Referee's Decision & Order, 5/11/2017, at 1–3. The referee affirmed the Department's determination of eligibility, expressly stating in her order that Quigley "is **NOT DISQUALIFIED** from receiving compensation under" Section 402(h) of the UCL. Referee's Decision & Order, 5/11/2017, at 3 (emphasis in original).

Agreeing with the Commonwealth Court, the Majority opines that the referee did not expressly rule on the eligibility issue because there was "no active controversy regarding this issue for the referee to decide." Maj. Op. at 30. The Majority's view of Quigley's claim for benefits is divorced from the relevant facts of record in this case. In her application, Quigley submitted a questionnaire and a Schedule C to her 2016 tax return to support her conclusion that she was self-employed in a sideline business (a statutorily defined status). On appeal to a referee for the finding of eligibility for benefits

in the amount awarded, Quigley did not appear for the hearing where the specific issue to be determined was whether she was self-employed and engaged in a sideline business and entitled to benefits in an amount to be determined. The Department's Service Center's determination of eligibility was not being "challenged" in an adversarial manner. Instead, at the hearing, the claimant had a burden of proof to meet: provide evidence that she was statutorily entitled to benefits and, if so, provide evidence to support a calculation of the benefits she should receive. On appeal to the Board, it was free to review the record (the application questionnaire and a Schedule C to her 2016 tax return) and make the ultimate determination on eligibility. Having taken an appeal, the statute clearly places the burden on the claimant to establish the nature of her self-employment because without that predicate proof, no award of benefits can be made.

The Majority's view that absent a contest by the employer, a finding of self-employment cannot be the subject of a referee's inquiry cannot be correct. While some unemployment compensation eligibility requirements can be conceded by an employer, e.g., not a voluntary quit or no willful misconduct, an employer is without knowledge or information to support a concession on the claimant's assertion of a statutory exception from the self-employment exclusion. That information is exclusively within the knowledge of the claimant. The Majority's rationale and holding means that an employer can force payment of UC benefits even if the claimant is not entitled to benefits and that neither the referee nor the Board can require proof by the claimant where a claimant appeals from the amount of benefits awarded. While the unemployment compensation law must be liberally construed in favor of awarding benefits, the result endorsed by the Majority is untenable.

The referee expressly ruled that Quigley was not disqualified from receiving benefits by her editing business, and the Board, in recounting the procedural history of this case, acknowledged that the Department "**issued a determination** granting benefits to the claimant under Section 402(h) of the Unemployment Compensation Law … [and] the **Referee issued a decision** affirming the Department's determination under Section 402(h) … ." Decision and Order, 8/8/2017, at 2 (emphasis supplied). Thus, the Board was required to consider the eligibility issue as part of its review. Although the Department and referee make decisions regarding eligibility, the Board is the ultimate fact finder. *Ductmate Indus., Inc. v. UCBR*, 949 A.2d 338, 342 (Pa. Commw. 2008). According to Section 504 of the UCL, on appeal from a referee's decision, the Board "shall have power … [to] review any claim … decided by[] a referee and … may affirm, modify, or reverse" the referee's determination "on the basis of the evidence previously submitted in the case." 43 P.S. § 824; Maj. Op. at 28 ("Section 824 establishes the Board's *right* to conduct appellate review."). According to the Department's regulations, the appellate "tribunal **shall consider the issues expressly ruled** upon in the decision from which the appeal was filed." 34 Pa. Code § 101.87 (emphasis supplied). *See also* 34 Pa. Code § 101.107(b) ("The Board **shall consider the issues expressly ruled upon** in the decision from which the appeal was filed.") (emphasis supplied)). Because the referee expressly ruled on the eligibility issue, that issue was squarely before the Board when it exercised its discretion to review the award based on Quigley's appeal to it. Quigley's eligibility was not raised sua sponte. The UCL and Department regulations required the Board to review eligibility, which was an issue at every stage of the proceeding. I cannot discern any basis to require notice by the Board to a claimant that it will exercise its

statutory authority. Respectfully, in my view, the Majority effectively rewrites the statute to reach its conclusion.

Based on its premise that the eligibility issue was not expressly ruled upon, the Majority further claims that Quigley was prejudiced "by [the Board] depriving her of … the opportunity to be heard" on the question of eligibility. Maj. Op. at 34. In support, the Majority cites 34 Pa. Code § 101.107(a), which provides: "[I]ssues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record." The Majority's reasoning is unsound because Section 101.107(a) applies when an issue was not previously considered or raised. As demonstrated, Quigley raised the eligibility issue when she applied for benefits, and the Department and referee expressly ruled on it. Thus, the Board was required to review it.

Furthermore, Quigley cannot dispute that she had an opportunity to be heard. She received a Notice of Hearing, advising her of a referee hearing scheduled for May 9, 2017 which, as recounted, notified her that her eligibility was at issue. On April 30, 2017, nine days before the hearing, she sent an email to the Board requesting a continuance[4] until

---

[4] Included within the hearing notice was a provision titled "Continuance of Hearing":

> If you cannot attend the hearing for any reason, you may request a continuance (postponement) of the hearing. You should do this as soon as possible. The Referee will grant this only for "proper cause" and upon terms that he/she deems proper. If a continuance is granted, a rescheduling will follow. **Requests for a continuance must be made in writing.**

T.T., Referee Exhibit #1 (Notice of Hearing, 4/26/2017, at 3) (emphasis in original).

"after the date of May 25, 2017" because she was "not able to appear in person on [May 9, 2017]." Email to RA-LI-UCBR-Philadelp@pa.gov, 4/30/2017. The next morning, May 1, 2017, a referee identified as "Beth" called Quigley and left a voicemail message "stating [the] request for continuance had been denied," explaining that "the hearing office cannot hold cases until the end of the month," and asking "for a reason for her not being able to attend the hearing." T.T., Referee Exhibit #3 (Report of Telephone Call on Hearings, 5/1/2017). Quigley did not respond.

Fatal to Quigley's request for relief are the facts that, at no time prior to the May 9, 2017 hearing, did she provide a "proper cause" reason for a continuance pursuant to 34 Pa. Code § 101.23(a)[5] or take any measures to confirm the status of her continuance request. Perhaps she believed that the documents she submitted on behalf of her benefits claim were sufficient to establish eligibility and that her one-time email communication was sufficient to secure a continuance.[6] Nevertheless, because she

---

[5] "Continuance of a hearing will be granted only for proper cause and upon the terms as the tribunal may consider proper." 34 Pa. Code § 101.23(a).

[6] On April 19, 2017, prior to the email request for a continuance, Quigley left a telephone message requesting that the Service Center contact her by email because her phone would be out of service for three weeks. Unemployment Service Center Claim Record, Annotation 170419 DHA7. She apparently presumed that her dictates as to her preferred method of communication would be followed even though she did not receive any confirmation. Justice Dougherty, in concurrence, points out that the Board's regulations require the referee to provide unrepresented parties with "every assistance compatible with the impartial discharge of its official duties." Concurring Op. at 3 (Dougherty, J.) (citing 34 Pa. Code 101.21(a)). Assuming for the sake of argument that this regulation pertains to scheduling matters, it does not relieve the applicant of exercising the most basic modicum of diligence in confirming that the continuance had or had not been granted. While I believe it is unreasonable for a claimant to presume that the individual preferences of a multitude of applicants for benefits can be accommodated by a government entity, it is cavalier for an applicant for benefits to fail to confirm the Service Center's intent to comply with the request for individualized treatment.

chose not to confirm her request for a continuance or appear at the referee hearing, Quigley gave up her opportunity to submit sufficient evidence to demonstrate her eligibility and the proper deduction occasioned by her editing business income. T.T., at 1; Referee's Decision & Order, 5/11/2017, at 2. Critically, Quigley did not request that the hearing be reopened,[7] an option that may have provided her with a second opportunity to provide proper cause for her absence and to be heard on the merits of her claim. Despite Quigley's failure to take advantage of this remedy to reopen the record, the Majority expresses distress over the Board's denial of Quigley's request for reargument before it. Majority Op. at 31. This was not an abuse of discretion and patently did not "compound" a problem with the Board's decision-making process. On two occasions, Quigley purely and simply did not follow easy rules. Pro se litigants are not entitled to relief from their disregard of opportunities presented to them. The Majority's decision to turn a blind eye to these record facts is baffling to me.

---

[7] Included within the hearing notice was a provision titled "Reopening after Scheduled Hearing":

> If you are prevented from attending the scheduled hearing because of a compelling reason, you may request to have the hearing reopened. You must set forth the specific reasons and circumstances that are alleged to constitute "proper cause" for non-appearance at the scheduled hearing.

T.T., Referee Exhibit #1 (Notice of Hearing, 4/26/2017, at 3). *See also* 34 Pa. Code § 101.24(a) (providing that absent party must file written request to reopen case, identifying the "proper cause" reasons for not appearing at scheduled time), and 34 Pa. Code § 101.104(c)(3) ("The further appeal shall be allowed and additional evidence required … [where u]nder § 101.24 (relating to reopening of hearing) a request for reopening received after the decision of the referee was issued which constitutes a request for further appeal to the Board.").

The Board was not required to give Quigley another hearing. The Board had discretion to "allow or disallow any application for further appeal without hearing, solely on the basis of the application and the record." 34 Pa. Code § 101.104(a). Where the Board allows an appeal, it "will review the previously established record and determine whether there is a need for an additional hearing." *Id.* § 101.104(c).[8] Based on the previously established record, the Board exercised its discretion as the final arbiter of eligibility and rejected Quigley's claim on the existing record, holding that she failed "to present competent evidence for the [Board] to conclude that she fit into the sideline activity exception." Decision and Order, 8/8/2017, at 1.[9]

In sum, the record confirms that Quigley had the requisite notice of the eligibility issue from the filing of her claim for unemployment compensation benefits and throughout the appeal process. Quigley had the opportunity to submit evidence in support of her claim for benefits and her challenge to the deduction amount, but she did not appear at the referee hearing due to her own inaction, not the denial of due process. The Board

[8] However, the Board must accept an appeal and take additional evidence where, inter alia, the record below is silent, incomplete or erroneous regarding a material point or there appears to have been a denial of a fair hearing. 34 Pa. Code § 101.104(c)(1–2). Notably, Quigley does not argue that she was entitled to present additional evidence because the record was silent, incomplete, or erroneous regarding the question of her eligibility or that she was denied a fair hearing. It would have been disingenuous to claim that she was denied a fair hearing because she failed to appear at the scheduled hearing and made no effort to exercise her right to attempt to reopen the record.

[9] Justice Dougherty provides a thoughtful argument that the Board's decision was "based upon violations of applicable administrative procedure, and the decision was not supported by substantial evidence." Concurring Op. at 5 (Dougherty, J.). Although Justice Dougherty may have articulated grounds to affirm the Commonwealth Court "for any reason," the issue of whether the Board properly exercised its discretion as the final arbiter of Quigley's eligibility is not before this Court. Our grant of review was limited to whether the Commonwealth Court's decision unduly restricted the Board's scope of review. I maintain that it did.

was required to review the referee's express ruling on Quigley's eligibility for benefits, but it was not obligated to provide an additional hearing. I discern no abuse of discretion or error of law by the Board. Accordingly, I would reverse the Commonwealth Court's order.