IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ReJeana Silla,                          :
              Petitioner                :
                                        :    No. 1098 C.D. 2019
       v.                               :
                                        :    Submitted:  February 14, 2020
Unemployment Compensation               :
Board of Review,                        :
              Respondent                :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                               FILED:  June 30, 2020


              ReJeana Silla (Claimant) petitions for review, *pro se*, of the July 18, 2019 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision, which determined that Claimant was ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1]  The Board concluded that Claimant was correctly found to be ineligible for benefits due to willful misconduct as caused by her tardiness and an incident where she became overly intoxicated on her employer's premises.  Upon review, we affirm.

_____

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act."  43 P.S. §802(e).

## Background

Claimant worked for Southside Local Bar and Kitchen, LLC (Employer), full-time, as a bartender until January 9, 2019. (Certified Record (C.R.) at Item Nos. 1, 5, 12; Finding of Fact (F.F.) No. 1.) On March 17, 2019, Claimant applied for unemployment compensation benefits. On April 10, 2019, the local service center determined that Claimant was ineligible for benefits under section 402(e) of the Law. Claimant timely appealed the local service center's determination and a hearing was held by a referee on May 3, 2019. (C.R. at Item Nos. 7, 10, 11.)

Employer's General Manager, Justin Pisano, testified that the last day Claimant worked was on January 9, 2019, and that she was formally terminated on January 17, 2019. (Notes of Testimony (N.T.) at 9.) Mr. Pisano explained that Claimant's employment was terminated for multiple reasons but "the main [reason]" was because Claimant was persistently late. *Id.* Mr. Pisano testified that Claimant was given a written warning about her tardiness on November 14, 2018, and that she received a final written warning with regard to her tardiness on December 26, 2018. (N.T. at 9, 12.) Mr. Pisano testified that, despite these warnings, Claimant arrived to work ten minutes late on January 9, 2019. (N.T. at 10-11.) Mr. Pisano also testified that on January 10, 2019, Claimant became extremely intoxicated at Employer's premises. He testified, however, that even if the January 10, 2019 incident had not occurred, Claimant would have "most likely" been terminated anyway. (N.T. at 11-12.)

Claimant also testified at the hearing. Claimant testified that she was not scheduled to work the night of January 10, 2019, when she became excessively intoxicated. (N.T. at 13.) She maintained that she was discharged for violating "the reporting[-]off policy" and that she never missed a day of work without "reporting off."

2

*Id.* Claimant clarified that according to the "reporting off" policy she was required to notify her manager when she was going to be late or absent. *Id.* She testified that she was scheduled to work on January 9, 2019, at 4:30 p.m., but that she was not dropped off until 4:38 p.m. (N.T. at 13, 16.) Claimant stated that she never "missed a day of" work and that she was "sure" she notified someone that she was going to be late on January 9, 2019. (N.T. at 15-16.) Claimant did not submit any evidence to substantiate her assertion that she notified Employer that she was going to be late on January 9, 2019. (N.T. at 16-17.) Instead, Claimant testified that she notified Employer that she was going to be late on January 3. *Id.*

When asked about the reason Mr. Pisano gave for her termination, Claimant testified that Mr. Pisano told her that it was because she "got drunk" and "blacked out that night." (N.T. at 15.) Claimant explained that even though she was drinking with other employees at the bar, she did not intend to go to Employer's premises to drink. *Id.* Claimant said that she was handed a pitcher of alcohol by her co-workers and continued to consume alcoholic beverages. *Id.* Claimant admits that she "blacked out that night." *Id.* When asked again why she was terminated, Claimant stated that she was "[black] out drunk and [threw] up on herself." *Id.* When asked whether Mr. Pisano brought up Claimant's tardiness when she was terminated, Claimant stated that "[h]e may have said that I have been late multiple times." (N.T. at 16.)

In rebuttal, Mr. Pisano clarified that Employer's policy on tardiness encompassed excessive tardiness as a possible justification for termination. (N.T. at 17-18.) Mr. Pisano also clarified that Employer has no policy on employees drinking, and employees are permitted to eat and drink on its premises when they are not

3

working, but found Claimant's extreme intoxication on the night of January 10, 2019, to be intolerable. (N.T. at 18.)

The referee also admitted documentary evidence. Two pages of Employer's handbook were entered into evidence. (C.R. at Item No. 3; N.T. at 4.) Claimant admitted that she signed the employee handbook, acknowledged that she read and reviewed the handbook, understood the policies and procedures in the handbook, and agreed to comply with them. *Id.* The pages admitted into evidence contained a warning that excessive tardiness and being under the influence of drugs or alcohol could result in immediate termination. *Id.* A written warning, dated November 14, 2018, for tardiness, was also introduced, which specifically stated that Claimant was "late on several occasions." (N.T., Employer's Exhibit 1.) Finally, Employer's December 26, 2018 final warning regarding tardiness, which Claimant signed and acknowledged, was admitted. (C.R. at Item No. 3; N.T. at 4.) These documents were admitted without objection.

On May 13, 2019, the referee affirmed the local service center's determination, concluding that Claimant was ineligible for benefits under section 402(e) of the Law. (C.R. at Item No. 12.) The referee found that Employer has a policy that authorizes disciplinary action up to immediate discharge for excessive tardiness. (F.F. No. 2.) The referee also found that Claimant had issues with tardiness throughout her employment. (F.F. No. 3.) Additionally, the referee found that on November 14, 2018, Employer issued Claimant a written warning for being late to work on several occasions; and on December 26, 2018, Employer provided Claimant with a final written warning for being 30 minutes late to work. (F.F. Nos. 5-6.) At the time of the final warning, Employer informed Claimant that the next infraction of its tardiness policy would result in termination. (F.F. at No. 7.) On January 9, 2019, Claimant was

4

ten minutes late for her shift. (F.F. No. 8.) Subsequently, on January 10, 2019, Claimant was not working, but stopped by Employer's location where she proceeded to become extremely intoxicated and required assistance from Employer "to return home." (F.F. Nos. 9-10.) Following this incident, Claimant was removed from the schedule on January 11, 2019, and on January 17, 2019, was terminated for tardiness and the "incident" regarding her excessive intoxication on January 10, 2019. (F.F. Nos. 11-12.)

The referee concluded that Employer had successfully established Claimant's willful misconduct with credible evidence of Claimant's repeated tardiness and her intoxication on the night of January 10, 2019. (Referee's decision at 2.) The referee concluded that Claimant failed to meet her burden to demonstrate good cause for her alleged willful misconduct. (Referee's decision at 2-3.) In rejecting her testimony as not credible, the referee found that Claimant did not deny her recurrent tardiness, or her obligation to notify her employer if she was going to be late. (Referee's decision at 3.) Additionally, the referee concluded that Claimant failed to show good cause for the January 10, 2019 drinking incident. *Id.* In sum, the referee concluded that Claimant was ineligible for benefits under section 402(e) of the Law because her actions arose to unjustified willful misconduct. *Id.* Claimant appealed to the Board. (C.R. at Item No. 13.)

The Board concluded that the referee's decision was correct under the Law. (C.R. at Item No. 17, Board's decision at 1.) The Board did not credit Claimant's testimony that she notified a manager that she was "running late on her final incident." *Id.* Contrarily, the Board credited Employer's evidence that Claimant was discharged because of her tardiness, and would have been so regardless of "the drinking incident." *Id.* Nevertheless, the Board concluded that the drinking incident also amounted to

5

willful misconduct. *Id*. Furthermore, the Board concluded that Claimant did not "credibly show" that Employer inconsistently enforced its rules or standards with regard to drinking in excess on its premises or its policy on tardiness. *Id*. The Board adopted and incorporated the referee's findings and conclusions and affirmed the referee's decision. (Board's decision at 2.) Claimant appealed to this Court.

## Discussion

On appeal,[2] Claimant purports to raise[3] several issues for this Court's review, which can be distilled to the following: (1) whether the Board committed an error of law in affirming the referee's decision; (2) whether the Board's findings are supported by substantial evidence; (3) whether the Board erred in not making its own findings of fact and/or additional findings; and (4) whether the Board properly accepted the credibility of Employer's testimony over Claimant's.[4]

In support of the first two issues, Claimant argues that she never missed work or called off, and that other employees were permitted to call off or be late. Regarding the incident on January 10, 2019, Claimant argues that she was not working

---

[2] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[3] Between Claimant's Amended Brief and Reply Brief, she alleges numerous separate issues, which we have summarized and grouped accordingly.

[4] Claimant also argues that the conduct of Employer caused a unilateral change in the terms and conditions of her employment, furnishing a necessitous and compelling reason for her to quit her employment. However, that argument is irrelevant as to whether she is ineligible for benefits under section 402(e) of the Law, and only is relevant as to whether a claimant is ineligible for benefits under section 402(b) of the Law (relating to a necessitous and compelling reason for voluntarily terminating employment).

6

at the time; other employees, including managers, were permitted to drink when not working; and her actions were Employer's "liability" because of how much alcohol Claimant was served. She argues that she showed good cause for her actions with regard to her excessive intoxication because "[it was] not prohibited [by Employer's rules] and [E]mployer overserved the alcohol, which is a Dram Shop violation."[5] (Claimant's Am. Br. at 19.)

In support of the third issue, Claimant argues that the Board did not "[apply] additional facts from the [hearing]" or the "legal standards to [its] decision." (Claimant's Am. Br. at 8.) In support of the fourth issue, Claimant argues that the Board did not reject her testimony or make findings to the contrary and the Board erred by crediting certain testimony over other testimony.

In response, the Board argues that it correctly found Claimant to be ineligible for benefits due to her excessive tardiness and that her tardiness was the actual reason for her termination. In support, the Board points to Employer's credited explanation for terminating Claimant. (C.R. at Item No. 3.) The Board also notes the Employer's unemployment compensation questionnaire, which again identified excessive tardiness as the actual reason for Claimant's termination. *Id*. Furthermore, the Board cites to Employer's testimony that Claimant was terminated for a number of reasons, but mainly because she was consistently late. In addition, the Board contends that Claimant would have been terminated regardless of the January 10, 2019 drinking incident, and even though Claimant was not written up for her tardiness on January 9, 2019, she was subsequently suspended on January 11, 2019. Relatedly, the Board

---

[5] The Dram Shop Act, Act of April 12, 1951, P.L. 90, *as amended*, Sections 493 and 497 of the Liquor Code, 47 P.S. §§4-493, 4-497, though it prohibits other conduct, is known due to its prohibition against liquor-selling establishments from serving alcohol to visibly intoxicated persons and its provision of liability for doing so.

points to the fact that Claimant had issues with tardiness, and that she received a written warning on November 14, 2018, and a final warning issued on December 26, 2018. Thus, the Board argues that because Claimant was 10 minutes late on January 9, 2019, she was properly suspended and subsequently terminated due to her tardiness.

Furthermore, the Board argues that Claimant was properly terminated for the January 10, 2019 incident. The Board posits that willful misconduct can arise while an employee is off-duty if the employee's conduct is sufficiently related to her work. As such, the Board argues that Claimant was terminated, in part, due to her excessive intoxication, and that she failed to prove good cause for either her intoxication or tardiness.

Claimant filed a lengthy reply brief in further support of her arguments. Claimant argues that she was not terminated due to her tardiness on January 9, 2019, but was terminated because of the January 10, 2019 incident, and would not have been terminated had that incident not occurred. She argues that her tardiness was not excessive in comparison to other employees and that she was singled out because Employer's rules were not consistently applied. Claimant further argues that her tardiness did not rise to the level of willful misconduct because she demonstrated with credible evidence that she had, on at least some occasions, complied with Employer's tardiness policy by notifying her supervisor on duty that she was going to be late. Finally, Claimant argues that her intoxication on January 10, 2019, did not constitute willful misconduct because it was common for Employer to permit other employees to become extremely intoxicated.

**Whether the Board Committed an Error of Law in Concluding Claimant was Ineligible for Benefits due to Willful Misconduct?**

8

Section 402(e) of the Law provides that an employee shall be ineligible for unemployment compensation benefits for any week in which her unemployment is due to willful misconduct connected to her work. 43 P.S. §802(e). Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 n.1 (Pa. 2001).

### A. Claimant's Excessive Tardiness

If an employer alleges misconduct because of a claimant's violation of a work rule, the employer must prove the existence of the rule and its violation, and the burden then shifts to the claimant to show good cause for her actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "[W]e examine whether 'the rule or policy is reasonable in light of all the circumstances, and if so, whether the employee [had] good cause to violate the rule or policy.'" *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997) (quoting *Spirnak v. Unemployment Compensation Board of Review*, 557 A.2d 451, 453 (Pa. Cmwlth. 1989)). The reasonableness of an employer's rule is determined based upon whether its application of the rule under the circumstances was "fair, just, and appropriate to pursue a legitimate interest." *Caterpillar, Inc.*, 703 A.2d at 456-57.

9

With regard to an employee's excessive tardiness, this Court has explained that

> the existence of a specific rule is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and [that] the employee's conduct is so inimical to the employer's interests that discharge is a natural result. *Orend v. Unemployment Compensation Board of Review,* 821 A.2d 659, 663 (Pa. Cmwlth. 2003). One situation where a specific rule is unnecessary is when an employee fails to show up for work on time. It is well-settled that an employer has the right to expect that its employees will attend work when they are scheduled and that they will be on time; habitual tardiness is behavior that is "inimical to an employer's interest." *Fritz v. Unemployment Compensation Board of Review,* 446 A.2d 330, 333 (Pa. Cmwlth. 1982).
>
> "A conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where . . . the employee has been warned and/or reprimanded for prior similar conduct." *Department of Transportation v. Unemployment Compensation Board of Review*, 479 A.2d 57, 58 (Pa. Cmwlth. 1984). "We have consistently held that chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct." *Conibear v. Unemployment Compensation Board of Review*, 463 A.2d 1231, 1232 (Pa. Cmwlth. 1983).

*Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162-63 (Pa. Cmwlth. 2013). Moreover, even if tardiness is justified, a claimant's failure to comply with an employer's reporting-off requirement may constitute willful misconduct. *Yerger v. Unemployment Compensation Board of Review,* 457 A.2d 1333, 1334 (Pa. Cmwlth. 1983).

We conclude that the Board made no error of law in determining that Claimant was terminated due to excessive tardiness and that her excessive tardiness constituted willful misconduct. First, Claimant was terminated pursuant to an established work rule. Part of Employer's employee handbook, which was signed and acknowledged by Claimant, was admitted into evidence. (C.R. at Item No. 3, N.T. at 3-5.) The signed portion of the handbook very clearly states that "conduct that may result in immediate termination" includes "**excessive tardiness**." (C.R. at Item No. 3) (emphasis added). On November 14, 2018, Claimant received a written warning for tardiness. Claimant signed the warning and acknowledged in writing, that she had been "**late on several occasions**." (F.F. No. 5; N.T., Employer's Exhibit 1) (emphasis added). Additionally, Claimant was issued a "fair and final warning" for her tardiness on December 26, 2018. (F.F. No. 6; N.T. at 10.) This warning, which Claimant also signed and acknowledged, stated that she was "again 30 minutes late to her shift. She has been written-up before. This is her fair and final warning, [the] next step is termination." (F.F. No. 6; N.T. at 10; C.R. at Item No. 3.) Despite these written warnings, Claimant arrived to work on January 9, 2019, 10 minutes late. (F.F. No. 9; N.T. at 11.) In fact, Claimant's own testimony supports that she arrived to work late that day. Claimant testified that her Uber "dropped [her] off at work at 4:38," even though her shift indisputably began at 4:30 p.m. (N.T. at 16.) There is no doubt that Claimant was late for work on January 9, 2019, following the fair and final warning. Aside from that incident, Claimant's testimony also indicates that she arrived to work late on January 3, 2019. (N.T. at 16, 17.)

Employer had a right to expect that Claimant would refrain from being tardy because habitual tardiness is behavior that is inimical to an employer's interest. *See Orend*, 821 A.2d at 663; *Fritz*, 446 A.2d at 333. We have consistently held that

11

"chronic tardiness, particularly after a warning, exhibits a sufficient disregard of the employer's interests to constitute willful misconduct." *Ellis*, 59 A.3d at 1163 (citing *Conibear*, 463 A.2d at 1232). Here, Claimant's prior tardiness and her continued tardiness after receiving two prior warnings, including a "final" warning, constituted willful misconduct which rendered her ineligible for benefits under the Law. We routinely conclude as such. *See e.g., Easton v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1994 C.D. 2016, filed September 8, 2017) (unreported)[6] (concluding that the claimant was ineligible for benefits due to willful misconduct where he was advised "to correct his habitual tardiness and yet continued to be late thereafter"); *Twillie v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1924 C.D. 2015, filed July 27, 2016) (unreported) (concluding that the claimant was correctly determined to be ineligible for benefits where he was warned for his tardiness, but continued to show up late for work).

Next, we must determine if Claimant established good cause for her actions. For the most part, Claimant's arguments in support of her actions are comprised of irrelevant allegations, including that Employer falsified a report against her, she was not being paid, and she was being forced to work on a holiday. Quite simply, these arguments are unrelated to and do not tend to provide an excuse for her tardiness. The only relevant assertion she makes with regard to good cause is that she logged into her Uber account to demonstrate that she was stuck in traffic; however the

---

[6] *Easton* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

Board did not credit this testimony.[7] We conclude that she has failed to provide any evidence of good cause which justified her tardiness.

In a further attempt to justify her misconduct, Claimant argues that Employer's rules were not fairly and consistently applied and that tardiness and absenteeism from other employees was tolerated without repercussion. Our jurisprudence recognizes that "[i]nconsistent enforcement of a work rule defeats the existence of the work rule." *Allen v. Unemployment Compensation Board of Review*, 189 A.3d 1128 (Pa. Cmwlth. 2018) (citing *City of Beaver Falls v. Unemployment Compensation Board of Review*, 441 A.2d 510 (Pa. Cmwlth. 1982)). "Inconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow." *Gordon Terminal Service Co. v. Unemployment Compensation Board of Review*, 211 A.3d 893, 900 (Pa. Cmwlth. 2019). In support of her argument, Claimant points to her testimony on pages 12, 14, and 15 of the hearing transcript. (N.T. at 12, 14, 15.) The relevant testimony on this point reveals that Claimant asserts that she "never missed a day of work," that she was "warned about her attendance," and that "there was [sic] people who called off – there was [sic] people that didn't show up and still didn't get fired, there was [sic] people that came in two hours late to relieve me from my bartending shift." (N.T. at 15.) Other than these broad and vague self-serving assertions, Claimant failed to point to

---

[7] As a related matter, Claimant also takes issue with Employer's alleged "reporting[-]off" policy. Although the referee made no finding with regard to whether Employer had a reporting-off policy, Claimant alleges that according to the policy, if an employee is going to be late he/she has to let a manager know and it would be "fine." (N.T. at 13, 16.) Assuming the policy existed according to Claimant's interpretation, we would conclude that Claimant failed to show through **any credible evidence** found by the Board that she complied with **any reporting-off policy** on January 9, 2019. The Board did not credit Claimant's assertion that she notified a manager that she was running late on January 9, 2019, and we will not reevaluate the Board's credibility determinations. In other words, even if there was a reporting-off policy, Claimant failed to prove that she complied with any such policy.

13

any specific instances where a particular employee(s) was allowed to be late without repercussion.

More importantly, the Board determined that Claimant's testimony did not credibly show that Employer inconsistently enforced its rules or standards. "The Board is . . . empowered to resolve conflicts in the evidence." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985)). "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak*, 501 A.2d at 1388). We will not-reevaluate the Board's credibility determinations on appeal, and conclude that Claimant failed to adduce any evidence found credible by the Board which suggests that Employer's tardiness rules were inconsistently enforced.

### B. The January 10, 2019 Incident

Claimant argues that if it was not for the incident that occurred on January 10, 2019, she would not have been terminated. Claimant points to the fact that she finished her shift on January 9, 2019, and she was not separately reprimanded for her tardiness on that day.

It is well-settled that "a claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007). However, "[a]n employer is bound by its stated reasons for an employee's dismissal and cannot raise new reasons at the hearing." *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 344 n.5 (Pa. Cmwlth. 2008). "[T]he employer must also prove that the

14

act in question was the actual reason for the claimant's discharge." *Panaro v. Unemployment Compensation Board of Review*, 413 A.2d 772, 774 (Pa. Cmwlth. 1980); *accord Charles v. Unemployment Compensation Board of Review*, 764 A.2d 708, 711 n.4 (Pa. Cmwlth. 2000).

Here, the Board credited Employer's evidence that Claimant would have been discharged regardless of the drinking incident. (Board's decision at 1.) As we explained in *Serrano*, the Board is entitled to make credibility determinations, and this Court, absent an appropriate challenge, will not subject them to re-evaluation on judicial review. 149 A.3d at 439. Thus, we conclude that based on the evidence that the Board found to be credible, Claimant would have been terminated regardless of the drinking incident and her excessive tardiness was the real reason for her termination. Under *Glenn*, even if Claimant was also discharged for the January 10, 2019 incident, we have already concluded that she was appropriately terminated. Therefore, we need not address whether Claimant was also discharged for the January 10, 2019 incident or if that incident constituted willful misconduct.

**The Board's Findings and Credibility Determinations**

Claimant next takes issue with the fact that the Board did not make its own findings of fact or make additional findings.[8] Specifically, she states that the Board erred "in not reviewing" her allegations with regard to sexual harassment, not being paid, being "forced" to work holidays, and being "written up on false allegations."

---

[8] Claimant argues that "there were findings of fact that were not supported by the evidence in its entirety," and the "[Board's] holding that [] Claimant was terminated for willful misconduct was not supported by substantial evidence." (Claimant's Am. Br. at 2, 13.) With regard to Claimant's substantial evidence challenge, Claimant does not specifically challenge or even allude to any of the Board's factual findings or otherwise develop the issue in her brief. Where a claimant does not challenge any specific findings of fact, the Board's findings are conclusive on appeal. *Campbell v. Unemployment Compensation Board of Review,* 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997). Thus, we will not address Claimant's alleged substantial evidence challenge.

15

(Claimant's Am. Br. at 13.) She also complains that the Board "erred and violated the Claimant's constitutional rights by failing to remand the case to the Referee for additional findings of fact." *Id.* at 13-14.

The Board adopted and incorporated the referee's findings and conclusions. The findings of fact must include all necessary findings to resolve the issues raised by the evidence and are relevant to the decision. *Wheeler v. Unemployment Compensation Board of Review*, 450 A.2d 775, 777 n.6 (Pa. Cmwlth. 1982). "However, while an adjudication must include all findings necessary to resolve issues raised by the evidence which are relevant to the decision, it need not always include findings regarding all allegations and defenses raised by a party." *Owens v. Unemployment Compensation Board of Review*, 748 A.2d 794, 797 (Pa. Cmwlth. 2000) (citing *Van Duser v. Unemployment Compensation Board of Review,* 642 A.2d 544, 549 (Pa. Cmwlth. 1994)). "Where . . . the Board's findings of fact are insufficient as a matter of law to establish the legal conclusions necessary to resolve a case, the case must be remanded to the Board for the making of new and adequate findings." *Bell Beverage v. Unemployment Compensation Board of Review*, 49 A.3d 49, 56 (Pa. Cmwlth. 2012). As our analysis above demonstrates, we need not remand the matter because the findings of fact as adopted by the Board were adequate to support its conclusion that Claimant was ineligible for benefits due to her willful misconduct. Moreover, the references that Claimant makes to the findings of fact that should have been made are either irrelevant or not preserved on appeal.[9]

---

[9] Claimant makes numerous allegations with regard to being required to work on New Year's Eve, being written up on unrelated "false allegations," not being paid her "tip-out," and being written up for failing to do a task she never knew she had to complete. These allegations are simply irrelevant to whether Claimant committed willful misconduct for excessive tardiness. Moreover, Claimant's allegations of sexual harassment and/or a hostile working environment were not raised before the referee or the Board and are, therefore, waived on appeal. "An issue not raised before any administrative tribunal is considered to be waived." *Thiessen v. Unemployment Compensation Board*

16

With regard to Claimant's arguments involving credibility determinations she argues that the "[Board] did not reject [her] testimony," and that "[Employer] did not deny certain facts made by [her]." (Claimant's Am. Br. at 8-9.) She also claims that "[Employer] had contradicted statements on record." *Id*. at 11. Claimant argues that it was improper for the Board to reject her testimony and to accept Employer's testimony over hers without providing any reason.

However, as explained above, it is well-settled that the Board is the ultimate fact finder and is entitled to make its own determinations as to witness credibility and evidentiary weight, and to resolve conflicts of evidence and these determinations are not subject to re-evaluation on judicial review. *See Serrano*, 149 A.3d 435. "The Board is the arbiter of credibility and is free to accept or reject the testimony of any witness in whole or in part." *Ackley v. Unemployment Compensation Board of Review*, 166 A.3d 565, 568 (Pa. Cmwlth. 2017). Moreover, "[t]his Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board." *Chartiers Community Mental Health and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1172-73 (Pa. Cmwlth. 2016).

As we explained, the Board and referee were permitted to make credibility determinations, and we are precluded from reweighing the evidence or substituting our own findings. The referee found Claimant to be not credible, resolved all conflicts in the evidence in Employer's favor, and, in adopting the referee's findings and conclusion, the Board also adopted his credibility and weight determinations. Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is

*of Review*, 178 A.3d 255, 260 (Pa. Cmwlth. 2018), *appeal denied,* 194 A.3d 554 (Pa. 2018) (citing *Wing v. Unemployment Compensation Board of Review*, 436 A.2d 179 (Pa. 1981)).

17

substantial evidence in the record to support the findings actually made. *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 654 A.2d 153, 157 (Pa. Cmwlth. 1995). As explained, Claimant failed to successfully challenge any of the findings as unsupported by substantial evidence.

As such, we cannot conclude that the Board erred in failing to find Claimant's testimony to be more credible than the evidence presented by Employer, and the referee's findings as adopted by the Board were sufficient to support the conclusion that Claimant was terminated for willful misconduct.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ReJeana Silla,                              :
                    Petitioner              :
                                            :   No. 1098 C.D. 2019
          v.                                :
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :

## *ORDER*


          AND NOW, this 30th day of June, 2020, the July 18, 2019 Order of the

Unemployment Compensation Board of Review is AFFIRMED.


                              _____
                              PATRICIA A. McCULLOUGH, Judge